141 P.3d 13 (2006)
STATE of Washington, Petitioner,
v.
Jacob Melvin KORUM, Respondent.
No. 75491-8.
Supreme Court of Washington, En Banc.
Argued February 10, 2005.
Decided August 17, 2006.
*17 Mr. Paul Douglas Weisser, AG Criminal Justice Division, Ms. Pamela Beth Loginsky, Washington Assoc of Prosecuting Atty, Olympia, for Petitioner/Appellant.
Mr. Montell E. Hester, Mr. Wayne Clark Fricke, Attorney at Law, Tacoma, Ms. Suzanne Lee Elliott, Attorney at Law, Seattle, for Appellee/Respondent.
FAIRHURST, J.
ś 1 After Jacob Melvin Korum withdrew his guilty plea, the prosecuting attorney charged Korum with additional counts as promised during the plea bargaining process. The Court of Appeals dismissed the added charges for prosecutorial vindictiveness and dismissed Korum's kidnapping charges as incidental to his robbery charges. We reverse the Court of Appeals and hold that Korum failed to prove that a presumption of prosecutorial vindictiveness arose in this case. We affirm the Court of Appeals dismissal of Korum's kidnapping charges because the State failed to properly raise the issue in this court. Thus, we reverse the Court of Appeals in part, affirm in part, and remand for resentencing consistent with this opinion.

I. FACTUAL AND PROCEDURAL HISTORY
ś 2 Korum and four other men, Michael Bybee, Ethan Durden, Brian Mellick, and Zachary Phillips, carried out a series of home invasions during the summer of 1997, selecting drug dealers as the victims because they would be unlikely to report the crimes. The men planned to invade the homes late at night and to bind any persons they found inside to facilitate their crimes. During the fourth and final home invasion, which occurred at the Beaty/Molina home, Korum served as the driver and communicated with the others inside by walkie-talkie. The police responded to a neighbor's 911 call and arrested Mellick, Durden, and Bybee. Korum and Phillips escaped but were later arrested. Mellick offered the police information about the other home invasions in exchange for a reduced sentence, and implicated Korum in the invasions of three other homes.
ś 3 The prosecuting attorney charged Korum with 16 counts of burglary, robbery, kidnapping, and assault in relation to the Beaty/Molina home invasion. In June 1998, the State and Korum entered into plea negotiations. In exchange for Korum's guilty plea and the consequent resolution of the case, the State promised several things â two of which are pertinent to this appeal. First, the State promised to amend Korum's original 16 count information to reduce the substantive charges to allow for 15 years within the standard range plus a 5 year deadly weapon enhancement. Second, the State promised not to file additional charges for Korum's involvement in the other home invasions that it was investigating concurrently with the plea negotiations.
ś 4 On July 31, 1998, in exchange for the State's promises, Korum pleaded guilty to one count of first degree kidnapping while armed with a deadly weapon and one count of second degree possession of a firearm.[1] Korum's father was present when the trial *18 court entered Korum's guilty plea, and he heard his son admit to being the driver during the Beaty/Molina home invasions. At sentencing, Korum apologized to the Beaty family. As promised, the State recommended a sentence of 132 months, which consisted of 72 months for the kidnapping count, a 60 month firearm enhancement to run consecutively to the kidnapping sentence, and a concurrent 12 month sentence for the firearm possession count. The sentencing court imposed a total sentence of 135 months of confinement, followed by two years of community placement.
ś 5 After pleading guilty, Korum later successfully withdrew his plea agreement when he realized that he had not been advised of a mandatory two year community placement and decided to proceed to trial. As indicated, the prosecutor filed an amended information containing 32 counts in total, consisting of the original 16 counts, the firearm possession count from the plea agreement, and 15 additional counts related to the other three home invasions. A jury convicted Korum on 30 counts, which consisted of 29 counts of burglary, robbery, kidnapping, and assault, each while armed with a deadly weapon, plus the firearm possession count. The jury acquitted Korum of one count of attempted robbery and one count of attempted burglary that duplicated other counts.
ś 6 At sentencing, the State recommended that the court impose consecutive sentences and consecutive firearm enhancements on the kidnapping counts under former RCW 9.94A.400(1)(b) (1996), recodified as RCW 9.94A.589, resulting in a standard sentence range of 608 to 810 months, plus 600 months of firearm sentence enhancements, for a total sentence range of 1,208 to 1,410 months. The State also recommended that the court impose exceptional sentences of 1,200 months on each of the 4 counts of burglary in the first degree and on the 2 counts of robbery in the first degree, to run concurrently with the sentences imposed on the other counts. The sentencing court imposed a sentence of 608 months plus firearm enhancements of 600 months, resulting in a total sentence of 1,208 months.
ś 7 Korum appealed his convictions and sentence on numerous grounds. In a partially published opinion, the Court of Appeals dismissed Korum's kidnapping charges, counts 2, 3, 8-12, 18, 19, and 25, as incidental to the robberies. State v. Korum, 120 Wash. App. 686, 719, 86 P.3d 166 (2004). The court also dismissed the charges added after Korum withdrew his guilty plea, counts 17, 20-22, 24, and 26-32, on the basis of prosecutorial vindictiveness. Id. at 719-20, 86 P.3d 166. The Court of Appeals also remanded for resentencing with directions to the trial court to consider whether it should dismiss any of the remaining charges as a deterrent to prosecutorial vindictiveness under CrR 8.3(b). Id. at 720, 86 P.3d 166. The State petitioned for review, and Korum submitted a conditional cross-petition for review challenging his convictions and sentence on other grounds. We granted both petitions for review. State v. Korum, 152 Wash.2d 1021, 101 P.3d 108 (2004).

II. ISSUES
A. Whether this court should review the Court of Appeals reversal of Korum's kidnapping convictions.
B. Whether the prosecuting attorney's decision to add charges after Korum withdrew his guilty plea constituted prosecutorial vindictiveness.
C. Whether the trial court should dismiss additional charges under CrR 8.3 in order to deter prosecutorial vindictiveness.
D. Whether Korum's sentence should be reversed on any other grounds.
E. Whether Korum's underlying convictions should be reversed.

III. ANALYSIS

A. The State failed to properly appeal the Court of Appeals reversal of Korum's kidnapping convictions
ś 8 The Court of Appeals dismissed Korum's kidnapping charges, counts 2, 3, 8-12, 18, 19, and 25, because the kidnappings were incidental to the robberies as a matter of law. Korum, 120 Wash.App. at 707, 86 P.3d 166. The State's petition for review *19 sets out three issues, the second of which is whether a court may "intervene in a prosecutor's selection of charges merely because some of the charges may merge at sentencing or the court believes that the possible punishment for all the alleged offenses will result in an extremely long sentence[.]"[2] State of Wash.'s Pet. for Review (Pet. for Review) at 1. The State argues on this issue under the heading "A Court's Ability to Review a Prosecutor's Charging Decision is Extremely Limited." Pet. for Review at 12 (emphasis omitted). The State did not otherwise list the issue of whether the kidnapping charges merged in the statement of issues presented for review section of its petition for review.
ś 9 In its supplemental brief, the State argues that the kidnapping charges should be reinstated because they were not incidental to the robberies or, alternatively, that if the charges do merge, the sentences should be imposed on the kidnapping counts rather than the robbery counts. Korum moves to strike the portions of the State's supplemental brief that address the merger of the kidnapping charges, arguing that the State did not properly raise the issue of whether the kidnapping charges were properly dismissed in its petition for review.
ś 10 RAP 13.7(b) provides that "the Supreme Court will review only the questions raised in ... the petition for review and the answer, unless the Supreme Court orders otherwise ...." See Denaxas v. Sandstone Court of Bellevue, L.L.C., 148 Wash.2d 654, 671, 63 P.3d 125 (2003) (an issue first raised in a supplemental brief is not within the scope of review). We note that the State did "raise" the merger issue in the argument section of its petition for review. Pet. for Review at 16 ("Division II's dismissal of the kidnapping convictions, which occurred in conjunction with the robberies but involved victims other than those robbed, conflicts with this Court's majority opinion in State v. Vladovic, 99 Wash.2d 413], 420-22, 662 P.2d 853 (1983).... Review should be accepted to address this conflict." (footnote omitted)).
ś 11 However, as noted above, the State did not list the issue of whether the kidnapping charges merged in its concise statement of issues presented for review. RAP 13.4(c)(5) directs petitioners to include "[a] concise statement of the issues presented for review." See State v. Collins, 121 Wash.2d 168, 178-79, 847 P.2d 919 (1993) (holding that a petitioner had not properly raised a right to bear arms issue in his petition for review because he broached it only in his argument section, not in his petition's statement of issues as directed by RAP 13.4(c)(5)); Clam Shacks of Am., Inc. v. Skagit County, 109 Wash.2d 91, 98, 743 P.2d 265 (1987) (holding that "RAP 13.4(c)(5) requires a concise statement of the issues presented for review" and that RAP 13.7(b) limits review only to those issues properly raised in the petition as directed in RAP 13.4(c)(5)); see also State v. Coria, 146 Wash.2d 631, 655 n. 9, 48 P.3d 980 (2002) (Sanders, J., dissenting) (reasoning that according to RAP 13.7(b), this court must consider issues only raised in the petition for review, and that issues are only properly raised according to RAP 13.4(c)(5) if they are in the concise statement of issues and set forth with specificity, and it is not sufficient if they are only raised in the petition's argument section). We conclude that the State only referenced the merger of the kidnapping charges in its concise statement of issues presented for review in relation to prosecutorial discretion and did not clearly raise the issue of whether the kidnapping charges were incidental to the robberies. Therefore, we grant Korum's motion to strike and decline to consider the merger issue because the State did not properly "raise" the issue within the meaning of RAP 13.7(b) and 13.4(c)(5).

B. The prosecuting attorney's decision to add charges after Korum withdrew his guilty plea did not constitute prosecutorial vindictiveness

1. The prosecuting attorney had the discretion to add charges after Korum withdrew his plea agreement
ś 12 Prosecuting attorneys are vested with great discretion in determining how and *20 when to file criminal charges. See State v. Lewis, 115 Wash.2d 294, 299, 797 P.2d 1141 (1990); see also Deal v. United States, 508 U.S. 129, 134 n. 2, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993) (recognizing prosecutors have "universally available and unvoidable power to charge or not to charge an offense."). The Sentencing Reform Act of 1981(SRA), chapter 9.94A RCW, recognizes this discretion and provides standards, not mandates, to guide prosecutors:
These standards are intended solely for the guidance of prosecutors in the state of Washington. They are not intended to, do not and may not be relied upon to create a right or benefit, substantive or procedural, enforceable at law by a party in litigation with the state.
RCW 9.94A.401. See also DAVID BOERNER, SENTENCING IN WASHINGTON: A LEGAL ANALYSIS OF THE SENTENCING REFORM ACT OF 1981 § 12.24, at 12-47 (1985) ("It is clear the Sentencing Guidelines Commission and the Legislature intended to prevent judicial review of [the prosecutor's charging] decisions.").
ś 13 Despite this express language, the Court of Appeals held that prosecutorial discretion is statutorily limited. See Korum, 120 Wash.App. at 701-02, 86 P.3d 166. Specifically, the court relied on former RCW 9.94A.440(2)(2) and (b) (1996), recodified as RCW 9.94A.411(2)(a)(ii) and (B), which provide that "[t]he prosecutor should not overcharge to obtain a guilty plea," and notes that overcharging includes "[c]harging additional counts." See Korum, 120 Wash.App. at 701-02, 86 P.3d 166.
ś 14 However, the Court of Appeals failed to reference relevant portions of the SRA's guidelines that support the State's decision to charge Korum with the additional counts. Whereas the language cited by the Court of Appeals is precatory, earlier language in former RCW 9.94A.440(2) provides that "[c]rimes against persons will be filed if sufficient admissible evidence exists."[3] (emphasis added). All of the charges filed against Korum, with the exception of unlawful possession of a firearm in the second degree, fall under the category of crimes against persons.[4]See former RCW 9.94A.440(2).
ś 15 Additionally, former RCW 9.94A.440(2)(1)(a) provides that other charges should be filed if they are necessary to strengthen the State's case at trial. Here, the additional charges related to crimes where Korum personally entered the invaded homes and hence was identifiable by nonparticipants in the crime. In the incident related to the original charges, Korum did not enter the homes. Thus, the State would have depended almost entirely on the testimony of Korum's accomplices. As a result, the decision to add charges after Korum withdrew his plea agreement was not only within the prosecuting attorney's discretion, it was also supported by the SRA guidelines and strengthened the State's case.

*21 2. The charges added after Korum withdrew his plea agreement do not give rise to a presumption of prosecutorial vindictiveness
ś 16 Constitutional due process principles prohibit prosecutorial vindictiveness. See generally United States v. Goodwin, 457 U.S. 368, 372-85, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982). Prosecutorial vindictiveness occurs when "the government acts against a defendant in response to the defendant's prior exercise of constitutional or statutory rights." United States v. Meyer, 810 F.2d 1242, 1245 (D.C.Cir.1987). Thus, "a prosecutorial action is `vindictive' only if designed to penalize a defendant for invoking legally protected rights." Id. (emphasis added).
ś 17 There are two kinds of prosecutorial vindictiveness: actual vindictiveness and a presumption of vindictiveness. Id. The latter is at issue here. A presumption of vindictiveness arises when a defendant can prove that "all of the circumstances, when taken together, support a realistic likelihood of vindictiveness." Id. at 1246. The prosecution may then rebut the presumption by presenting "objective evidence justifying the prosecutorial action." Id. at 1245.
ś 18 Federal circuit courts have not conclusively decided whether a presumption of vindictiveness can even occur in a pretrial setting, as was the case here. See, e.g., Paradise v. CCI Warden, 136 F.3d 331, 335 (2d Cir.1998) ("this court has consistently adhered to the principle that the `presumption of prosecutorial vindictiveness does not exist in a pretrial setting.'" (quoting United States v. White, 972 F.2d 16, 19 (2d Cir.1992)) (internal quotation marks omitted)); United States v. Yarbough, 55 F.3d 280, 283 (7th Cir.1995) (the addition of six counts after the defendant successfully withdrew his plea agreement does not give rise to a presumption of vindictiveness). But see Meyer, 810 F.2d at 1246 (concluding that Goodwin did not adopt a per se rule for whether a presumption of vindictiveness may arise pretrial); United States v. Krezdorn, 718 F.2d 1360, 1364 (5th Cir.1983) ("[t]he proper solution is not to be found by classifying prosecutorial decisions ... as being made pre- or post-trial"); United States v. Suarez, 263 F.3d 468, 479 (6th Cir.2001) ("prosecutorial vindictiveness can potentially be found in the pre-trial addition of charges following pretrial assertions of protected rights." (citing United States v. Andrews, 633 F.2d 449, 454 (6th Cir.1980))); United States v. Gallegos-Curiel, 681 F.2d 1164, 1170 (9th Cir.1982) ("[d]epartures from the initial indictment do not raise presumptions of vindictiveness except in a rare case."); United States v. Barner, 441 F.3d 1310, 1317 (11th Cir.2006) (concluding that although Goodwin reasoned "that aspects of the pre-trial situation make vindictiveness less likely," that decision did not rule out "the possibility that a case could present additional factors that would make it appropriate to use the presumption in a pretrial setting.").
ś 19 Although this court has not decisively ruled on the issue, we noted in State v. McDowell, 102 Wash.2d 341, 344, 685 P.2d 595 (1984) that "Washington case law ... suggests that actual vindictiveness is required to invalidate the prosecutor's adversarial decisions made prior to trial." However, we need not reach the issue of whether a presumption of vindictiveness may arise pretrial because, even assuming arguendo that a presumption of vindictiveness may arise in the pretrial context, we hold that Korum fails to establish this presumption.
ś 20 In two cases, the United States Supreme Court emphatically rejected the notion that filing additional charges after a defendant refuses a guilty plea gives rise to a presumption of vindictiveness. See Goodwin, 457 U.S. at 377-85, 102 S.Ct. 2485; Bordenkircher v. Hayes, 434 U.S. 357, 360-65, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). In Bordenkircher, the Court held that the defendant's due process rights were not violated when a prosecutor carried out an explicit threat, made during plea negotiations, to seek a habitual offender indictment if the defendant refused to plead guilty to the original charge. Id. at 365, 98 S.Ct. 663. Under the original charge, the prosecutor offered to recommend a five year sentence. Id. at 358, 98 S.Ct. 663. The habitual offender indictment, however, would subject the defendant to a mandatory sentence of life imprisonment given his two *22 prior felony convictions. Id. at 358-59, 98 S.Ct. 663. The defendant refused the plea, the prosecutor sought the habitual offender indictment, and the defendant was convicted and sentenced to life imprisonment. Id. at 359, 98 S.Ct. 663. The Supreme Court held that there is no violation of due process if "the accused is free to accept or reject the prosecution's offer" and "the prosecutor has probable cause to believe that the accused committed an offense defined by statute." Id. at 363-64, 98 S.Ct. 663.
While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable" â and permissible â "attribute of any legitimate system which tolerates and encourages the negotiation of pleas." It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.
... To hold that the prosecutor's desire to induce a guilty plea ... may play no part in his charging decision, would contradict the very premises that underlie the concept of plea bargaining itself.
Id. at 364-65, 98 S.Ct. 663 (quoting Chaffin v. Stynchcombe, 412 U.S. 17, 31, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973)).
ś 21 Four years later, the United States Supreme Court affirmed its Bordenkircher analysis and found no presumption of prosecutorial vindictiveness arose when a prosecutor filed a more serious charge after the defendant refused to plead guilty. Goodwin, 457 U.S. at 377-85, 102 S.Ct. 2485. "[T]he mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified." Id. at 382-83, 102 S.Ct. 2485.
ś 22 Although Bordenkircher and Goodwin both involved situations where plea negotiations failed, this case is not distinguishable on the basis that Korum withdrew his guilty plea. There is no analytically relevant distinction between a defendant's failure to plead guilty and a defendant's decision to withdraw a guilty plea. The plea bargaining process encourages a defendant to forgo his trial rights in the attempt to resolve a case. A plea bargain must be knowing, intelligent, and voluntary precisely because the defendant surrenders his constitutional trial rights. State v. Walsh, 143 Wash.2d 1, 7, 17 P.3d 591 (2001). A defendant's failure to plead guilty and a defendant's decision to withdraw a plea both amount to a failure of the plea bargaining process and return the defendant and the prosecutor to square one, at which point the defendant may exercise his right to proceed to trial. Thus, the concern over prosecutorial vindictiveness in relation to rejecting a plea and withdrawing a plea is the same â because it interferes with a defendant's exercise of his constitutional trial rights.
ś 23 Moreover, there is support for the proposition that bringing additional charges after the withdrawal of a guilty plea does not give rise to a presumption of vindictiveness. In Yarbough, the United States Court of Appeals for the Seventh Circuit held that Yarbough's withdrawal of his plea agreement did not increase the likelihood of prosecutorial vindictiveness. 55 F.3d at 283. Yarbough's original indictment included three charges. Id. at 282. The defendant then agreed to plead guilty to two of the charges but later successfully withdrew his plea. Id. Before trial, the prosecutor amended the indictment to include five additional charges. Id. The trial court denied Yarbough's motion to dismiss the amended indictment on vindictiveness grounds and the seventh circuit affirmed. Id. at 280-81.
ś 24 Although the seventh circuit acknowledged that Yarbough's case differed from Goodwin and Bordenkircher because Yarbough had withdrawn his guilty plea rather than reject a plea agreement altogether, the court determined that the withdrawal did not change Yarbough's due process interests. Id. at 283. The court reasoned that "[e]ven if a defendant initially entered a plea of guilty before successfully withdrawing that plea, he still, in essence, has refused the *23 government's offer of a plea and has exercised his right to put the government to its proof at trial." Id. Similarly, the United States Court of Appeals for the Eleventh Circuit has also held that the addition of charges after the withdrawal of a guilty plea did not give rise to a presumption of vindictiveness. Barner, 441 F.3d at 1319. As in Yarbough and Barner, the fact that Korum withdrew his guilty plea, rather than simply rejecting a plea offer, does not alter the constitutional rights at stake and does not lend any more credence to Korum's prosecutorial vindictiveness claim. Therefore, we conclude that the mere filing of additional or more serious charges after the withdrawal of a plea agreement, without proving additional facts, does not give rise to a presumption of vindictiveness.
ś 25 Korum argues, and the Court of Appeals agreed, that the following disparities are additional facts that collectively establish a presumption of vindictiveness: (1) the disparity between the State's recommendation of a 10 year sentence following Korum's guilty plea and 100 year sentence recommendation after Korum's jury trial, and (2) the disparity between Korum's 100 year sentence (and the number of counts on which Korum was tried) and the significantly lower sentence of his codefendants (who pleaded guilty to far fewer counts). Korum, 120 Wash.App. at 710, 86 P.3d 166. However, the additional facts cited by Korum to prove a presumption of vindictiveness all stem from the prosecutor's decision to add new charges after Korum withdrew his guilty plea.[5]
ś 26 Both disparities stem from Korum's 100 year sentence and, thus, are not additional facts but are, instead, the direct result of the prosecutor's decision to file additional charges. See Barner, 441 F.3d at 1320-21 (discrepancy between sentence under guilty plea and possible sentence at trial as well as discrepancy between sentence of defendant who withdrew his guilty plea and sentences of codefendants who pleaded guilty do not give rise to a presumption of vindictiveness). In fact, the Court of Appeals correctly noted that "[u]nderlying this exponential increase in sentencing, in part, was the State's doubling the number of charges after Korum withdrew his guilty plea and requested a trial." Korum, 120 Wash.App. at 711, 86 P.3d 166. However, neither Korum nor the Court of Appeals ever contended that the prosecutor lacked probable cause for the additional charges, or that the added charges exceeded the 16 additional charges that the prosecutor had promised to file if Korum did not plead guilty.[6] The charges added after Korum withdrew his plea agreement involved three additional home invasions in which Korum was a personal participant and that the prosecution was investigating concurrently with the plea negotiations. Clerk's Papers (CP) at 187, 1056-57.[7] We conclude that the *24 increased number and the consequent severity of the collective charges caused the discrepancy in the sentences, not prosecutorial vindictiveness.[8]
ś 27 We also conclude that the Court of Appeals was incorrect when it observed that "[a]lthough some significant increase in sentence recommendation is to be expected when a defendant rebuffs a plea bargain and puts the State to the risk and expense of a trial, nonetheless, this increase cannot be of a magnitude that suggests vindictive retaliation" against the defendant. Korum, 120 Wash.App. at 714, 86 P.3d 166 (footnote omitted). Based on our reading of Supreme Court precedent, the mere filing of additional charges and the consequent increase in sentence, regardless of the "magnitude," cannot support a presumption of vindictiveness without proving "additional facts."[9]
ś 28 Additionally, none of the prosecutor's actions during sentencing give rise to a presumption of vindictiveness. The prosecutor asked for an exceptional sentence upward on six of the burglary counts because he believed there were bases for an exceptional sentence. 16 Report of Proceedings (RP) at 2325. The exceptional sentences would have run concurrently and would not have increased the sentence. Id. Korum received a sentence that was statutorily required and within the standard range.
ś 29 Finally, the prosecuting attorney's differing characterizations of Korum's culpability during plea negotiations and at trial do not give rise to a presumption of prosecutorial vindictiveness. This discrepancy also stems from the prosecutor's decision to file additional charges. The plea agreement included only two charges stemming from one incident in which the evidence indicated that Korum was a less culpable participant. CP at 191-92, 1055-57. The additional charges included four other incidents in which Korum was a personal participant. Id. As a result of these additional charges, the prosecutor's changed characterization of Korum was justified and does not give rise to a presumption of vindictiveness.
ś 30 Because Korum fails to distinguish Bordenkircher and Goodwin and because these cases reject the Court of Appeals' cited disparities that form a basis for finding a presumption of vindictiveness, we conclude that the collective circumstances do not give rise to such a presumption. This conclusion is consistent with the overwhelming majority of Washington Court of Appeals opinions that have addressed claims of prosecutorial vindictiveness in the pretrial setting. See State v. Bonisisio, 92 Wash.App. 783, 790-92, 964 P.2d 1222 (1998) (finding no prosecutorial vindictiveness when the State charged the defendant with 10 additional counts after the *25 defendant rejected a plea agreement); State v. Lee, 69 Wash.App. 31, 35-38, 847 P.2d 25 (1993) (finding no prosecutorial vindictiveness when the State increased the charge after defendant refused to plead guilty); State v. Lass, 55 Wash.App. 300, 306, 777 P.2d 539 (1989) (filing a more serious charge after the defendant elects to go to trial does not amount to prosecutorial vindictiveness); State v. Fryer, 36 Wash.App. 312, 316-17, 673 P.2d 881 (1983) (finding no prosecutorial vindictiveness when the prosecutor carried out a threat to file an additional charge against the defendant if he refused to plead guilty to two lesser charges); State v. Serr, 35 Wash.App. 5, 10-11, 664 P.2d 1301 (1983) (finding no prosecutorial vindictiveness when the State carried out a threat to file a habitual criminal charge against the defendant if he refused to plead guilty); State v. Penn, 32 Wash.App. 911, 913-14, 650 P.2d 1111 (1982) (finding no prosecutorial vindictiveness when the State filed additional charges after the defendant elected to go to trial).
ś 31 The irony in the Court of Appeals approach is that instead of protecting a defendant from prosecutorial abuse, that holding only seeks to encourage it. Prosecutors would risk allegations of "prosecutorial vindictiveness" when they carry out threats to file additional charges. To avoid this risk, as well as preserve their ability to pursue additional charges, prosecutors would be more likely to charge every available offense initially. See Goodwin, 457 U.S. at 379 n. 10, 102 S.Ct. 2485 (citing Bordenkircher, 434 U.S. at 368, 98 S.Ct. 663 (Blackmun, J., dissenting)). In that situation, defendants would "`bargain against a greater charge, face the likelihood of increased bail, and run the risk that the court would be less inclined to accept a bargained plea.'" Id. (quoting Bordenkircher, 434 U.S. at 368, 98 S.Ct. 663 (Blackmum, J., dissenting)).
ś 32 The facts of this case simply fail to show that the State was punishing Korum for withdrawing his plea and therefore do not raise a presumption of vindictiveness. Korum made a conscious decision to withdraw his plea and pursue his chances at trial. He made that decision with the knowledge that the State intended to file additional charges if it failed to resolve the case through a plea agreement and that he ran the risk of being convicted on all of the charges. When that proved true for 30 of the 32 charges, Korum raised a claim of prosecutorial vindictiveness at his sentencing hearing. "A claim of vindictive prosecution cannot insulate the defendant from the lawful consequences of his tactical choices." United States v. Raymer, 941 F.2d 1031, 1042 (10th Cir.1991). Therefore, we reverse the Court of Appeals and reinstate Korum's convictions on the additional charges amended to his information after he withdrew his plea.

3. The sentencing court did not err by refusing to impose an exceptional sentence downward
ś 33 Although the sentencing court could have considered a downward departure in Korum's sentence under RCW 9.94A.535(1)(g), the court did not err by refusing to impose a sentence below the standard range, in consideration of the proportionality of Korum's sentence to the seriousness of his offenses and his criminal history. The language in RCW 9.94A.535 is discretionary, as it provides that "[t]he court may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535 (emphasis added). RCW 9.94A.010 enumerates the purposes of the SRA, one of which is to "[e]nsure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history." RCW 9.94A.010(1). Reading these two provisions together, it is clear that the sentencing court had the discretion to consider a downward departure in light of Korum's criminal history and the seriousness of his offenses, in addition to other mitigating factors, but that the court was in no way required to depart from the presumptive sentence. It was within the discretion of the sentencing court to impose a sentence within the standard range.
ś 34 Even though it was not required to do so, the sentencing court did consider a downward *26 departure from Korum's presumptive sentence. 16 RP at 2329. The record indicates that the sentencing court "spent a great deal of time looking at the statutory reasons for mitigating factors for an exceptional sentence ...." 16 RP at 2352. The court determined that "at every court appearance, [Korum had] demonstrated that he [was] in denial about his involvement in these crimes and that he believed himself to be the victim." 16 RP at 2357. The court also noted that it could not compare the proportionality of Korum's sentence to those of the other defendants because the others pleaded guilty to far fewer counts. 16 RP at 2355. After hearing argument on the downward departure issue, in addition to statements from Korum's family, friends, and victims, the court determined there were not "substantial and compelling reasons" to justify an exceptional sentence downward and sentenced Korum to the low end of the standard range. 16 RP at 2352, 2357.
ś 35 Just as the prosecuting attorney has the discretion to determine the number and severity of charges to bring against a defendant, the sentencing court has the discretion to determine whether the circumstances warrant an exceptional sentence downward. Here, the sentencing court determined that the circumstances did not warrant an exceptional sentence downward, and we cannot say that was error.[10]

C. CrR 8.3(b) does not authorize dismissal of charges untainted by arbitrary action or governmental misconduct
ś 36 In addition to dismissing the kidnapping charges and the charges added after Korum withdrew his guilty plea, the Court of Appeals remanded to the trial court to determine whether it should dismiss any of the remaining charges under CrR 8.3(b) to provide a deterrent to prosecutorial vindictiveness. CrR 8.3(b) provides that a "court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect[s] the accused's right to a fair trial."
ś 37 The State argues that dismissal of additional charges under CrR 8.3(b) would be "unprecedented and conflicts with the opinions of this Court." Pet. for Review at 18. This court has previously determined that dismissal under CrR 8.3(b) is an extraordinary remedy and is improper unless the due process rights of the defendant are materially prejudiced. State v. Moen, 150 Wash.2d 221, 226, 76 P.3d 721 (2003). A trial court cannot dismiss charges under CrR 8.3(b) absent a showing of arbitrary action or governmental misconduct. State v. Michielli, 132 Wash.2d 229, 240, 937 P.2d 587 (1997). CrR 8.3(b) "is designed to protect against arbitrary action or governmental misconduct and not to grant courts the authority to substitute their judgment for that of the prosecutor." State v. Starrish, 86 Wash.2d 200, 205, 544 P.2d 1 (1975).
ś 38 Because we hold that Korum failed to prove prosecutorial vindictiveness and Korum has not proved the arbitrary action or governmental misconduct required for a dismissal under CrR 8.3(b), we reverse the Court of Appeals' remand for consideration of whether additional counts should be dismissed under CrR 8.3(b) based on prosecutorial vindictiveness.[11]

*27 D. Korum's sentence should not be reversed on the other grounds he alleges
ś 39 Korum asks this court to consider whether his sentence constitutes "cruel and unusual punishment,"[12] as well as any other "sentencing issues" that the Court of Appeals did not reach because its decision rendered them moot.[13] Answer to Pet. for Review and Conditional Cross-Pet. for Review (Answer) at 27. When this court reverses a decision of the Court of Appeals that did not consider all of the issues raised that might have supported the court's decision, this court must either decide those issues or remand the case to the Court of Appeals to decide the issues. RAP 13.7(b). Because we reverse the Court of Appeals dismissal of the charges added after Korum withdrew his plea agreement, we address Korum's two sentencing arguments that the Court of Appeals declined to reach because it dismissed those charges.

1. Korum's sentence does not amount to cruel punishment under article I, section 14 of the Washington Constitution
ś 40 Korum argues that his sentence constitutes cruel punishment under the Washington Constitution. Article I, section 14 provides that "[e]xcessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted." WASH. CONST. art. I, § 14. This court considers four factors in analyzing claims of cruel punishment: (1) the nature of the offense, (2) the legislative purpose behind the statute, (3) the punishment the defendant would have received in other jurisdictions for the same offense, and (4) the punishment meted out for other offenses in the same jurisdiction. State v. Fain, 94 Wash.2d 387, 397, 617 P.2d 720 (1980) (citing Hart v. Coiner, 483 F.2d 136, 140-43 (4th Cir.1973); State v. Gibson, 16 Wash.App. 119, 125-26, 553 P.2d 131 (1976)).
ś 41 With the exception of the firearm possession conviction, Korum's 19 remaining convictions after the dismissal of his kidnapping convictions, are all a "most serious offense," a "violent offense," and/or a crime "against persons." RCW 9.94A.030(28), (45); .411(2)(a). Under the first Fain factor, Korum offers no evidence why the nature of his offenses does not support a lengthy sentence. The second factor, the legislative purpose behind the statute, is applied with caution because "[l]egislative judgments as to punishments for criminal offenses are entitled to the greatest possible *28 deference ...." Fain, 94 Wash.2d at 401-02 n. 7, 617 P.2d 720. Here, the overarching purpose of these statutes was to significantly increase punishment for certain multiple offenders, particularly those who were armed. LAWS OF 1995, ch. 129, § 1. Korum fails to prove that his sentence does not reflect this legislative purpose.
ś 42 Under the third and fourth factors, Korum produced no evidence of how punishment in other jurisdictions or for other offenses in Washington compare to his sentence. Korum has not met his burden of proving that his sentence is disproportionate in light of the offenses he committed. As a result, we hold that Korum's sentence does not constitute cruel punishment under article I, section 14.

2. The consecutive sentencing provision of former RCW 9.94A.310 (1996) does not violate article II, section 19 of the Washington Constitution
ś 43 Korum argues that the consecutive sentencing provisions of former RCW 9.94A.310 (1996), which was part of Initiative 159, violate the single subject rule of the Washington Constitution. Article II, section 19, the single subject rule, states that "[n]o bill shall embrace more than one subject, and that shall be expressed in the title." WASH. CONST. art. II, § 19. This court addressed an article II, section 19 challenge to Initiative 159, and specifically to former RCW 9.94A.310, in State v. Broadaway, 133 Wash.2d 118, 120, 942 P.2d 363 (1997). We held that the legislative title of Initiative 159, "`An Act Relating to increasing penalties for armed crimes,'" was a restrictive title, and that "provisions not fairly within it will not be given force." Id. at 124, 942 P.2d 363 (quoting LAWS OF 1995, ch. 129), 127. We concluded that the title "carves out an area of criminal offenses, armed crime, and limits its scope to increasing penalties for armed crime." Id. at 127-28, 942 P.2d 363. As a result, we held that the firearm enhancement provisions were "not violative of article II, section 19, because penalty enhancements for crimes involving use of firearms fall squarely within the restrictive legislative title of Initiative 159." Id. at 129, 942 P.2d 363.
ś 44 Korum contends, however, that the consecutive sentencing portion of the initiative is not one a reasonably intelligent person would conclude is within the scope of the act, noting that consecutive and concurrent sentencing are dealt with in a separate part of the SRA. Br. of Appellant at 69. He also maintains that "[s]tacking the enhancements creates an exponentially longer sentence, and is inconsistent with proportionality between the criminal offense and the extent of punishment." Id. (citing In re Post Sentencing Review of Charles, 135 Wash.2d 239, 253, 955 P.2d 798 (1998)) (holding that former RCW 9.94A.310(3)(e) was ambiguous as to whether firearm sentencing enhancements ran consecutively to one another in addition to running consecutively to the sentences for the underlying crimes). Although other sections of the SRA cover consecutive sentencing, and this court held that former RCW 9.94A.310 may be ambiguous, these arguments alone are not sufficient to establish a violation of article II, section 19. Initiative 159 concerned increased punishments for armed crimes and consecutive sentencing for deadly weapon enhancements and is clearly within the scope of the subject and title of that act. Thus, we hold the consecutive sentencing provisions of former RCW 9.94A.310 do not violate article II, section 19.

E. No other errors warrant reversing Korum's underlying convictions

1. No violation under former CrR 3.3 (1995)
ś 45 Korum asks this court to address "his CrR 3.3 argument with respect to the new charges added after his withdrawal of his plea," which the Court of Appeals declined to address because it dismissed those new charges. Answer at 27. The Court of Appeals addressed Korum's former CrR 3.3 (1995) argument with respect to his original charges and held that the state brought Korum to trial in a timely fashion. State v. Korum, noted at 120 Wash.App. 686, 86 P.3d 166 (unpublished portion), 2004 Wash.App. LEXIS 383, at *59-60. Because we reverse the Court of Appeals dismissal of the charges added after Korum withdrew his plea agreement, we address Korum's former *29 CrR 3.3 argument only with respect to those new charges. RAP 13.7(b).
ś 46 Korum argues that the State violated former CrR 3.3, the rule governing the time for trial in criminal cases, because the same time for trial period applied to the charges added after Korum withdrew his plea agreement as applied to his original charges. Korum asserts that all of his charges arose from the "same criminal episode," and that there can be only one triggering date for calculating the time for trial. Br. of Appellant at 48-49 (citing State v. Erickson, 22 Wash.App. 38, 44, 587 P.2d 613 (1978)). Korum cites State v. Peterson, 90 Wash.2d 423, 431, 585 P.2d 66 (1978), for the proposition that the calculation of time for trial begins at the time the defendant answers any of the charges for all crimes stemming from the same criminal conduct. Br. of Appellant at 49. Korum argues that the constructive arraignment date for all of his charges should have been May 8, 2000 and that he should have been tried on the new charges on or before July 8, 2000. Id. at 49-50.
ś 47 The State asserts that Korum's reliance on Peterson is misguided because that case involved "separate charges from the same conduct." Br. of Resp't at 43 (citing Peterson, 90 Wash.2d at 431, 585 P.2d 66). In State v. Lee, 132 Wash.2d 498, 503, 939 P.2d 1223 (1997), this court held that "`same conduct' for purposes of deciding what offenses are `related offenses'" was "conduct involving a single criminal incident or episode." This court also concluded that "offenses involving separate incidents do not constitute same conduct." Id. at 504, 939 P.2d 1223. As the State notes, all of the charges added after Korum withdrew his plea agreement stem from incidents separate from the original charges. Korum's original 16 charges were all related to one incident, the Beaty/Molina home invasion. With the exception of the firearm possession charge, the charges added after Korum withdrew his plea agreement were all related to the invasions of three separate homes on three different dates. As a result, it was proper for the prosecuting attorney to charge the new counts separately, and Korum was arraigned properly on the new charges on June 13, 2000.
ś 48 Former CrR 3.3 provides that a defendant charged in superior court but not detained in jail must be brought to trial within 90 days after arraignment. Former CrR 3.3(c)(1). Because Korum was released on bail on December 7, 2000, the trial court had 90 days to bring him to trial. CP at 1193; former CrR 3.3(c)(1). Former CrR 3.3 also provides that continuances approved by the court or in writing shall be excluded from the computation of time for trial. Former CrR 3.3(g)(3), (h). On July 26, 2000, 43 days after his arraignment, Korum moved to continue his trial to September 25, 2000, and signed a waiver of his right to an earlier trial. CP at 1179-80. On August 16, 2000, Korum again moved to continue his trial until October 23, 2000, and again signed a waiver of his right to an earlier trial. CP at 1183-84. On October 23, 2000, Korum agreed, pursuant to a written agreement of the parties, to continue his trial to March 31, 2001, and signed a waiver of his right to an earlier trial. CP at 1189-90.
ś 49 Because the period from July 26, 2000 until March 31, 2001 was excluded from the time for trial computation, only 43 days had elapsed under former CrR 3.3 by the time Korum's trial began in March 2001. As a result, we hold that the State brought Korum to trial in a timely fashion and that there was no violation of former CrR 3.3 with respect to the charges added after Korum withdrew his plea agreement.
ś 50 Korum also challenges his convictions on six other grounds. Although he failed to list those six issues in the concise statement of issues presented for review section of his conditional cross-petition, we consider those issues below because Korum provided at least some substantive argument.[14]

2. The trial court did not improperly admit evidence of Korum's guilty plea under ER 410
ś 51 Korum argues that the trial court erred by admitting evidence of his *30 guilty plea. ER 410 provides in relevant part that "[e]xcept as otherwise provided in this rule, evidence of a plea of guilty, later withdrawn, ... or of any statements made in connection with, and relevant to, ... the foregoing plea[] ..., is not admissible in any civil or criminal proceeding against the person who made the plea ...." ER 410 encourages the compromise of criminal matters by allowing criminal defendants to participate in plea negotiations without fear that evidence of the plea or related statement will be used against him if he later proceeds to trial. State v. Nowinski, 124 Wash.App. 617, 628, 102 P.3d 840 (2004); State v. Nelson, 108 Wash.App. 918, 925, 33 P.3d 419 (2001).
ś 52 At trial, the prosecuting attorney asked Korum's father several questions on direct regarding whether Korum told him what his involvement was in the crimes. Korum's father repeatedly answered that Korum said he was present to purchase drugs. On cross-examination, defense counsel departed from what Korum had told his father about his involvement in the crimes and asked, "Jacob always denied ... involvement in the robbery, isn't that true ...?" 9 RP at 1522 (emphasis added). "He always has denied involvement in [the] kidnapping; isn't that true?" Id. (emphasis added). "Denied involvement in the assault, [the] robbery, the burglary?" Id. Each time, Korum's father responded affirmatively.
ś 53 Following the cross-examination, the State argued that defense counsel had opened the door to the impeachment of Korum's father and requested that the trial court allow evidence, for impeachment purposes, that Korum's father had heard his son admit to involvement in the crimes. Korum's father was present when his son entered his guilty plea, and Korum's father wrote a letter on his son's behalf, requesting leniency because he did not believe his son intended to harm anyone. The trial court ruled that defense counsel had opened the door and allowed the evidence. The State proceeded to attempt to impeach Korum's father in the following exchange:
Q. Mr. Korum, isn't it true your son had talked to you after the crime and told you that he was there, but he didn't intend for anybody to be hurt?
A. My son told me that he was there. He saw this happen.
....
Q. Mr. Korum, you were present at a court proceeding when he acknowledged that he was the driver at the August 30th robbery?
A. That he had driven?
Q. Correct. In fact, he apologized to the Beaty family; didn't he?
A. I read the statement. He did.
Q. You were present when he made that statement?
A. I don't know if he was present, but I had read [the statement].
10 RP at 1728-30.
ś 54 The State argues that admission of evidence of Korum's guilty plea was not error because defense counsel "opened the door" to the evidence, thus permitting the evidence to be used to impeach Korum's father. Under the invited error doctrine, a party my not set up error at trial and then complain about the error on appeal. In re Pers. Restraint of Tortorelli, 149 Wash.2d 82, 94, 66 P.3d 606 (2003). We are persuaded that defense counsel may have opened the door to otherwise inadmissible evidence by eliciting testimony that Korum had "always" denied his involvement in the crimes.[15]
ś 55 However, even if the admission of evidence of Korum's guilty plea was error, we are not convinced it constitutes reversible error. Reversal is not required *31 "`unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.'" State v. Bourgeois, 133 Wash.2d 389, 403, 945 P.2d 1120 (1997) (quoting State v. Tharp, 96 Wash.2d 591, 599, 637 P.2d 961 (1981)). Here, the outcome of the trial was not materially affected by admission of the impeachment evidence. Among other things, Korum testified that he had been present at two of the home invasions to purchase drugs. He also admitted to joking about being involved in a third invasion. Thus, we hold that the admission of evidence of Korum's guilty plea was not reversible error.

3. The trial court did not improperly admit evidence that the authorities linked Korum with his codefendants in a police report database
ś 56 Korum next challenges the trial court's decision to admit evidence that the authorities linked Korum to his codefendants through a police report database. Korum argues that the evidence should have been excluded because its probative value was substantially outweighed by the risk of unfair prejudice under ER 403.[16] Korum reasons that the evidence allowed the jury to speculate as to the reason for the connection and how extensive the contacts were, causing unfair prejudice.
ś 57 The Court of Appeals considered the admissibility of the police report database evidence only under ER 404(b), which prevents the admission of prior bad acts "to show action in conformity therewith." ER 404(b). The Court of Appeals noted that at trial Korum only objected to the evidence based on foundation. Korum, (unpublished portion), 2004 Wash.App. LEXIS 383 (unpublished portion), at *83-84. As a result, the Court of Appeals declined to consider the issue because it was first raised on appeal. See RAP 2.5(a).[17] While Korum did raise the admissibility of the police report database evidence under ER 404(b) in his pro se brief at the Court of Appeals, defense counsel also raised its admissibility under ER 403 both in the Court of Appeals and in this court. However, at trial, Korum objected only to the admissibility of the evidence based on foundation, not on ER 403, and the trial court overruled his objection. When the trial court overrules a specific objection and admits evidence, we "`will not reverse on the basis that the evidence should have been excluded under a different rule which could have been, but was not, argued at trial.'" State v. Ferguson, 100 Wash.2d 131, 138, 667 P.2d 68 (1983) (quoting 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 10, at 25 (2d ed.1982) and citing ER 103). Therefore, we decline to address the admissibility of evidence of the police report database link under ER 403. RAP 2.5(a).

4. The trial court did not err by admitting evidence from a plea agreement referencing a witness' willingness to take a polygraph examination
ś 58 Korum argues that the trial court erred by admitting evidence from witness Brian Mellick's plea agreement, specifically, his willingness to take a polygraph test. Mellick was one of Korum's codefendants, who participated in several of the home invasions and testified on behalf of the State at Korum's trial. Mellick pleaded guilty to his involvement in the home invasions, and the letter detailing his plea agreement explained that he would be subject to taking a polygraph to verify his truthfulness if the State so requested. In a pretrial hearing, the trial court originally decided that evidence of Mellick's plea agreement, including the letter, would not be admissible. The defense moved for reconsideration and the State and Korum eventually agreed to stipulate to the admissibility *32 of the letter. Defense counsel stated that the State "can argue from that document, from Mr. Mellick's testimony, any doggone thing they want to argue. I'm satisfied with that. Just from the face of the document itself." 4 RP at 383-84. The court ruled that the State could cross-examine Mellick regarding his plea negotiations but that the plea documents themselves could be used only to refresh his recollection. Mellick never received a polygraph examination.
ś 59 At trial, the State asked Mellick whether there was a provision in his plea agreement letter regarding how the State might verify his truthfulness and defense counsel objected. The trial court overruled the objection, noting that the parties had stipulated to the admissibility of the terms and conditions of the plea agreement without any limitation. On appeal, the Court of Appeals held that the invited error doctrine precluded Korum from complaining about admitting evidence of Mellick's plea agreement because he had solicited the ruling that the agreement was admissible. We agree that by stipulating to the admissibility of all of the terms and conditions of the plea agreement, Korum invited the error of admitting evidence of the terms providing for verification of Mellick's truthfulness through a polygraph examination. Therefore, we reject Korum's claim of error.

5. The prosecuting attorney did not improperly vouch for the credibility of witnesses
ś 60 Korum argues that the prosecuting attorney improperly vouched for some of the witnesses, constituting misconduct and depriving him of a fair trial. To prove prosecutorial misconduct, the defendant bears the burden of proving that the prosecuting attorney's conduct was both improper and prejudicial. State v. Brown, 132 Wash.2d 529, 561, 940 P.2d 546 (1997) (citing State v. Russell, 125 Wash.2d 24, 85, 882 P.2d 747 (1994)). In order to prove the conduct was prejudicial, the defendant must prove there is a substantial likelihood the misconduct affected the jury's verdict. In re Pers. Restraint of Pirtle, 136 Wash.2d 467, 481-82, 965 P.2d 593 (1998) (citing State v. Evans, 96 Wash.2d 1, 5, 633 P.2d 83 (1981)). If the defendant does not object to alleged misconduct at trial, the issue of prosecutorial misconduct is waived unless the misconduct was "so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." State v. Stenson, 132 Wash.2d 668, 719, 940 P.2d 1239 (1997) (citing State v. Gentry, 125 Wash.2d 570, 596, 888 P.2d 1105 (1995)).
ś 61 Korum contends that the prosecuting attorney vouched for Mellick's credibility by eliciting his testimony that he understood that the State would take his plea bargain away if it was not satisfied with the truthfulness of his statements. Additionally, Korum asserts that the prosecuting attorney vouched for Mellick's credibility in closing argument by referring to Mellick's promise to tell the truth or else lose the benefit of the plea bargain. This court has held that it is misconduct for a prosecutor to express a personal belief about the credibility of a witness. State v. Dhaliwal, 150 Wash.2d 559, 577-78, 79 P.3d 432 (2003) (citing State v. Reed, 102 Wash.2d 140, 145, 684 P.2d 699 (1984)). Here, however, the prosecuting attorney did not express a personal belief about Mellick's credibility. Rather, he merely elicited evidence of Mellick's promise to tell the truth, the admissibility of which, as we noted above, was something that Korum stipulated to pretrial. Additionally, Korum failed to object during the prosecution's closing argument, and we are not convinced that any misconduct that did occur was "so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." Stenson, 132 Wash.2d at 719, 940 P.2d 1239.
ś 62 Additionally, Korum argues that the State vouched for Mellick's credibility by eliciting testimony from Detective Knutson at trial that he did not require Mellick to submit to a polygraph examination because he had verified his statements. The prosecution cannot indirectly vouch for a witness by eliciting testimony from a police officer as to the credibility of a key witness. State v. Chavez, 76 Wash.App. 293, 299, 884 P.2d 624 *33 (1994). Here, Detective Knutson also did not state a personal belief about Mellick's truthfulness. Rather, he merely explained why he did not administer a polygraph examination to Mellick. Although Korum did object to the question of whether Detective Knutson ever requested that Mellick submit to a polygraph examination, the trial court overruled the objection because the prosecuting attorney had "already explored [that] area with Mr. Mellick." 10 RP at 1638. Moreover, Korum did not object to the subsequent question of why Detective Knutson did not request a polygraph examination, nor did Korum request a curative instruction. Therefore, we are also not convinced that any misconduct associated with Detective Knutson's testimony was so prejudicial as to require reversal.

6. The prosecuting attorney did not otherwise commit misconduct
ś 63 Korum alleges that the prosecuting attorney committed misconduct in three ways. We have already addressed Korum's first two allegations, that the prosecuting attorney improperly vouched for the credibility of witnesses and committed misconduct by eliciting testimony that Detective Knutson had not administered a polygraph examination to Mellick because he had verified Mellick's statements. Korum's third allegation is that the prosecuting attorney "asked numerous questions of witnesses throughout the trial that were objectionable." Answer at 24. Korum cites three passages from the prosecuting attorney's direct examination of Mellick in the effort to prove a pattern of "leading questions and questions containing hearsay." Id. Korum reasons that all three of his allegations of prosecutorial misconduct combined to deprive him of a fair trial.
ś 64 It is Korum's burden to prove that the prosecuting attorney's questions constituted misconduct. However, Korum does not provide any substantive argument as to why the cited passages constitute misconduct, nor does he demonstrate that the alleged misconduct caused any prejudicial effect. Additionally, Korum largely failed to object to the questions he now identifies as misconduct and did not request a curative instruction. As a result, we hold that Korum failed to prove that the prosecutor committed flagrant and ill-intentioned misconduct that resulted in enduring prejudice and an unfair trial.

7. The cumulative error doctrine is inapplicable
ś 65 Finally, Korum asserts that the cumulative error doctrine requires reversal, arguing that the combined errors of the trial court bolstered Mellick's credibility while undermining Korum's credibility. Korum argues that without Mellick's testimony his convictions could not stand. Cumulative error may warrant reversal, even if each error standing alone would otherwise be considered harmless. State v. Greiff, 141 Wash.2d 910, 929, 10 P.3d 390 (2000). However, as discussed above, Korum's claims of error are largely meritless or so minor that they do not warrant reversal. As a result, we cannot say that the combined errors warrant reversal. We hold that the cumulative error doctrine is inapplicable in this case.

IV. CONCLUSION
ś 66 We decline to review the Court of Appeals holding that the kidnapping charges were incidental to the robbery charges because the State failed to properly raise the issue in this court. We reverse the Court of Appeals holding that prosecutorial vindictiveness requires dismissal of the charges the prosecuting attorney added after Korum withdrew his guilty plea. Because we hold that Korum failed to prove a presumption of prosecutorial vindictiveness or other arbitrary action or governmental misconduct, we also hold that the remaining counts should not be dismissed under CrR 8.3(b). Finally, we find no reversible error resulting from any of the additional issues raised by Korum in his conditional cross-petition.
ś 67 As a result, we affirm the Court of Appeals dismissal of counts 2, 3, 8-12, 18, 19, and 25 because the State did not properly raise the issue in this court and reverse its dismissal of counts 17-22 and 24-32 for prosecutorial vindictiveness. Therefore, as indicated *34 by the attached appendix A, which we incorporate by reference, we uphold Korum's convictions on counts 1, 4-7, 13-17, 20-24, 26-27, and 30-32.
ś 68 Thus, we affirm the Court of Appeals in part, reverse in part, and remand for resentencing consistent with this opinion.
Concurring: ALEXANDER, C.J., BRIDGE and OWENS, JJ.

 APPENDIX A
-------------------------------------------------------------------------------------------
 KORUM'S CHARGES AND THEIR DISPOSITIONS
-------------------------------------------------------------------------------------------
Count No.: Charge: Verdict: Disposition:
-------------------------------------------------------------------------------------------
Count 1 Burglary in the first degree Guilty Uphold
-------------------------------------------------------------------------------------------
Special Verdict, Count 1 Armed with a deadly weapon Yes Uphold
-------------------------------------------------------------------------------------------
Count 2 Kidnapping in the first degree Guilty Merged
-------------------------------------------------------------------------------------------
Special Verdict, Count 2 Armed with a deadly weapon Yes Merged
-------------------------------------------------------------------------------------------
Count 3 Kidnapping in the first degree Guilty Merged
-------------------------------------------------------------------------------------------
Special Verdict, Count 3 Armed with a deadly weapon Yes Merged
-------------------------------------------------------------------------------------------
Count 4 Assault in the second degree Guilty Uphold
-------------------------------------------------------------------------------------------
Special Verdict, Count 4 Armed with a deadly weapon Yes Uphold
-------------------------------------------------------------------------------------------
Count 5 Assault in the second degree Guilty Uphold
-------------------------------------------------------------------------------------------
Special Verdict, Count 5 Armed with a deadly weapon Yes Uphold
-------------------------------------------------------------------------------------------
Count 6 Robbery in the first degree Guilty Uphold
-------------------------------------------------------------------------------------------
Special Verdict, Count 6 Armed with a deadly weapon Yes Uphold
-------------------------------------------------------------------------------------------
Count 7 Burglary in the first degree Guilty Uphold
-------------------------------------------------------------------------------------------
Special Verdict, Count 7 Armed with a deadly weapon Yes Uphold
-------------------------------------------------------------------------------------------
Count 8 Kidnapping in the first degree Guilty Merged
-------------------------------------------------------------------------------------------
Special Verdict, Count 8 Armed with a deadly weapon Yes Merged
-------------------------------------------------------------------------------------------
Count 9 Kidnapping in the first degree Guilty Merged
-------------------------------------------------------------------------------------------
Special Verdict, Count 9 Armed with a deadly weapon Yes Merged
-------------------------------------------------------------------------------------------
Count 10 Kidnapping in the first degree Guilty Merged
-------------------------------------------------------------------------------------------
Special Verdict, Count 10 Armed with a deadly weapon Yes Merged
-------------------------------------------------------------------------------------------
Count 11 Kidnapping in the first degree Guilty Merged
-------------------------------------------------------------------------------------------
Special Verdict, Count 11 Armed with a deadly weapon Yes Merged
-------------------------------------------------------------------------------------------
Count 12 Kidnapping in the first degree Guilty Merged
-------------------------------------------------------------------------------------------
Special Verdict, Count 12 Armed with a deadly weapon Yes Merged
-------------------------------------------------------------------------------------------
Count 13 Assault in the second degree Guilty Uphold
-------------------------------------------------------------------------------------------
Special Verdict, Count 13 Armed with a deadly weapon Yes Uphold
-------------------------------------------------------------------------------------------
Count 14 Assault in the second degree Guilty Uphold
-------------------------------------------------------------------------------------------
Special Verdict, Count 14 Armed with a deadly weapon Yes Uphold
-------------------------------------------------------------------------------------------
Count 15 Assault in the second degree Guilty Uphold
-------------------------------------------------------------------------------------------
Special Verdict, Count 15 Armed with a deadly weapon Yes Uphold
-------------------------------------------------------------------------------------------
Count 16 Attempted robbery, 1st degree Guilty Uphold
-------------------------------------------------------------------------------------------
Special Verdict, Count 16 Armed with a deadly weapon Yes Uphold
-------------------------------------------------------------------------------------------
Count 17 Burglary in the first degree Guilty Uphold
-------------------------------------------------------------------------------------------
Special Verdict, Count 17 Armed with a deadly weapon Yes Uphold
-------------------------------------------------------------------------------------------

*35
-------------------------------------------------------------------------------------------
Count 18 Kidnapping in the first degree Guilty Merged
-------------------------------------------------------------------------------------------
Special Verdict, Count 18 Armed with a deadly weapon Yes Merged
-------------------------------------------------------------------------------------------
Count 19 Kidnapping in the first degree Guilty Merged
-------------------------------------------------------------------------------------------
Special Verdict, Count 19 Armed with a deadly weapon Yes Merged
-------------------------------------------------------------------------------------------
Count 20 Robbery in the first degree Guilty Uphold
-------------------------------------------------------------------------------------------
Special Verdict, Count 20 Armed with a deadly weapon Yes Uphold
-------------------------------------------------------------------------------------------
Count 21 Assault in the second degree Guilty Uphold
-------------------------------------------------------------------------------------------
Special Verdict, Count 21 Armed with a deadly weapon Yes Uphold
-------------------------------------------------------------------------------------------
Count 22 Assault in the second degree Guilty Uphold
-------------------------------------------------------------------------------------------
Special Verdict, Count 22 Armed with a deadly weapon Yes Uphold
-------------------------------------------------------------------------------------------
Count 23 Unlawful possession firearm, 2d degree Guilty Not appealed
-------------------------------------------------------------------------------------------
Special Verdict, Count 23 None N/A N/A
-------------------------------------------------------------------------------------------
Count 24 Burglary in the first degree Guilty Uphold
-------------------------------------------------------------------------------------------
Special Verdict, Count 24 Armed with a deadly weapon Yes Uphold
-------------------------------------------------------------------------------------------
Count 25 Kidnapping in the first degree Guilty Merged
-------------------------------------------------------------------------------------------
Special Verdict, Count 25 Armed with a deadly weapon Yes Merged
-------------------------------------------------------------------------------------------
Count 26 Assault in the second degree Guilty Uphold
-------------------------------------------------------------------------------------------
Special Verdict, Count 26 Armed with a deadly weapon Yes Uphold
-------------------------------------------------------------------------------------------
Count 27 Attempted robbery, 1st degree Guilty Uphold
-------------------------------------------------------------------------------------------
Special Verdict, Count 27 Armed with a deadly weapon Yes Uphold
-------------------------------------------------------------------------------------------
Count 28 Attempted burglary, 1st degree Not guilty Not guilty
-------------------------------------------------------------------------------------------
Special Verdict, Count 28 Armed with a deadly weapon N/A N/A
-------------------------------------------------------------------------------------------
Count 29 Attempted robbery, 1st degree Not guilty Not guilty
-------------------------------------------------------------------------------------------
Special Verdict, Count 29 Armed with a deadly weapon N/A N/A
-------------------------------------------------------------------------------------------
Count 30 Attempted assault, 2d degree Guilty Uphold
-------------------------------------------------------------------------------------------
Special Verdict, Count 30 Armed with a deadly weapon Yes Uphold
-------------------------------------------------------------------------------------------
Count 31 Attempted burglary, 1st degree Guilty Uphold
-------------------------------------------------------------------------------------------
Special Verdict, Count 31 Armed with a deadly weapon Yes Uphold
-------------------------------------------------------------------------------------------
Count 32 Attempted robbery, 1st degree Guilty Uphold
-------------------------------------------------------------------------------------------
Special Verdict, Count 32 Armed with a deadly weapon Yes Uphold
-------------------------------------------------------------------------------------------

J.M. JOHNSON, J. (concurring in part and concurring in judgment).
ś 69 Neither the United States Supreme Court nor this court has ever applied the presumption of prosecutorial vindictiveness in the pretrial context, and for good reason. I write separately to emphasize those precedents and the mistakes in the dissent's assertion or implication to the contrary. I also write because much of the majority's arguendo analysis of alleged, but unproven, pretrial vindictiveness was unnecessary to dispose of this case.[1]
ś 70 The plea negotiation process is so important to our justice system that the system cannot function without it. Were this *36 court to apply a presumption of prosecutorial vindictiveness where criminal charges are increased in the pretrial context, the "give and take" dynamics of such plea negotiations would be undermined. Prosecutors would face judicial second-guessing of the discretionary charging decision that courts have long recognized as exclusively executive. To protect against such challenges, prosecutors may choose to file maximized criminal charges against defendants prior to plea negotiations. Ironically, the dissent's position would thus harm defendants who look to the plea negotiation process for leniency. Victims, whose rights are protected by article I, section 35 of our constitution, would be totally disregarded.
ś 71 Here, there is no objective evidence of vindictive charging. Jacob Korum cannot escape jury convictions for crimes he committed as a participant in numerous home invasions and criminal charges he properly faced after pretrial plea negotiations failed.

ANALYSIS
ś 72 Relevant precedent explicitly and categorically rejects the extension of a presumption of prosecutorial vindictiveness to the pretrial setting. Any such extension would be a reversal of this court's holdings and contravene the rationale of United States Supreme Court cases addressing the issue.
ś 73 I reiterate our better supported, preexisting standard that a presumption of prosecutorial vindictiveness may be applied only at the posttrial and appeal stages, i.e., where a prosecutor greatly increases charges after a defendant successfully asserts constitutional rights on appeal after trial. In that case, it is a justifiable presumption the increase in charges is because the defendant asserted his rights on appeal and prevailedâ with the result of a new trial. This presumption shifts the burden, and the presumption may be rebutted by the State.
ś 74 At the pretrial stage, the defendant must offer evidence to objectively prove actual prosecutorial vindictiveness (a most difficult standard, for good reasons). This court held in State v. McDowell, 102 Wash.2d 341, 344, 685 P.2d 595 (1984) that "Washington case law, in accord with Goodwin, suggests that actual vindictiveness is required to invalidate the prosecutor's adversarial decisions made prior to trial." Citing United States Supreme Court precedent, we expressly concluded that a presumption of prosecutorial vindictiveness does not apply in the pretrial context. Id. This holding had been uniformly applied throughout our state. See, e.g., State v. Bonisisio, 92 Wash.App. 783, 790-91, 964 P.2d 1222 (1998); State v. Lee, 69 Wash.App. 31, 37, 847 P.2d 25 (1993)
ś 75 Any suggested extension of the presumption of prosecutorial vindictiveness to the pretrial stage flies in the face of the two most important United States Supreme Court holdings. In United States v. Goodwin, 457 U.S. 368, 382-84, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) and Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the Court flatly refused to extend the presumption to the pretrial stage. The reasoning in both cases led to a similar conclusion in this case.
ś 76 Goodwin's refusal to extend a vindictiveness presumption to the pretrial setting reflects recognition that pretrial charging allows exercise of broad discretion by a prosecutor. 457 U.S. at 381, 102 S.Ct. 2485 ("There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting.") See also this court's decision in State v. Lewis, 115 Wash.2d 294, 299, 797 P.2d 1141 (1990) (discussing the "long-recognized principle that prosecutors are vested with wide discretion in determining how and when to file criminal charges") (citing Bordenkircher, 434 U.S. at 365, 98 S.Ct. 663); State v. Penn, 32 Wash.App. 911, 914, 650 P.2d 1111 (1982).
ś 77 Goodwin noted that prosecutorial discretion would be undermined if courts required anything less than objective proof of actual vindictiveness to overturn pretrial actions. 457 U.S. at 384, 102 S.Ct. 2485. The court also recognized that during the period of plea negotiations the prosecutor may uncover additional information or discover that the State's information has broader significance. Id. at 381, 102 S.Ct. 2485. This happened here; Korum's involvement in more home invasions became clearer during *37 the investigation. See, e.g., majority at 23-24 (citing Clerk's Papers at 187, 1056-57).
ś 78 The worst result here would be reached by the dissent, which would allow Korum a free pass on all the additional counts from the criminal home invasions, which occurred prior to August 30, 1997. Four home invasions would go unpunished (with multiple victims) if the dissent had its way. See dissent (Madsen, J.) at 22. As noted above, victims have constitutional rights (article I, section 35), which the dissent totally disregards.
ś 79 In plea negotiations, prosecutors must take into account the strength of the State's case and consider "the burdens and uncertainty of a trial." Goodwin, 457 U.S. at 382, 102 S.Ct. 2485. See also Lewis, 115 Wash.2d at 299, 797 P.2d 1141 ("Exercise of this discretion involves consideration of numerous factors, including the public interest as well as the strength of the State's case.") (citing United States v. Lovasco, 431 U.S. 783, 794, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977)). Given that "[m]otives are complex and difficult to prove," Goodwin restated the importance of allowing latitude to prosecutors entrusted with charging decisions. Goodwin, 457 U.S. at 373, 102 S.Ct. 2485. However, this necessary discretion would be undermined by presuming vindictiveness at any time where charges have been increased. We should be mindful of "the severity of such a presumption. . . which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct." Id.
ś 80 The plea negotiation process always requires explicit waiver of the defendants' right to plead not guilty and receive a jury trial. Prosecutors are expected to press defendants to waive such rights and plead to charges. As the United States Supreme Court in Bordenkircher noted, "by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." 434 U.S. at 364, 98 S.Ct. 663. In plea bargaining, vindictiveness cannot be presumed "so long as the accused is free to accept or reject the prosecution's offer." Id. at 363, 98 S.Ct. 663. The necessary context of negotiations allows the prosecutor's "carrying out a threat, made during plea negotiations, to bring additional charges against an accused who refused to plead guilty to the offense with which he was originally charged." Goodwin, 457 U.S. at 377, 102 S.Ct. 2485. Extending a presumption of vindictiveness to increase of charges at the pretrial stage puts the plea negotiating process in tension with its underlying purposes.
ś 81 Goodwin also insists that the plea negotiation setting is not appropriate to apply a presumption of vindictiveness just because charges are increased. The possibility of leniency through a plea negotiated abandonment of charges "is clearly a `benefit' to the defendant" and the threat of more charges is normally the downside. Id. at 379, 102 S.Ct. 2485. The United States Supreme Court acknowledged that "the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." Id. at 382, 102 S.Ct. 2485. Accordingly, Goodwin concluded that "changes in the charging decision that occur in the context of plea negotiation are an inaccurate measure of improper prosecutorial `vindictiveness.'" 457 U.S. at 379-80, 102 S.Ct. 2485. The Court of Appeals previously heeded this warning, lest "a legitimate plea negotiation tool" be removed from the process, thereby making prosecutors unlikely to "exercise their legitimate discretion to charge a lesser offense initially in the reasonable expectation of obtaining a guilty plea, thus saving the State from the necessity of protracted plea negotiations and/or a trial." Lee, 69 Wash.App. at 38, 847 P.2d 25. See also Bordenkircher, 434 U.S. at 365, 98 S.Ct. 663. Application of a presumption of vindictiveness in the pretrial setting by appellate courts may even prompt prosecutors to charge a defendant with every possible offense in order to preserve all charges where a defendant rejects a plea.
ś 82 These relevant precedents all provide that, as a matter of law, there is no presumption of prosecutorial vindictiveness in the *38 pretrial stage. The majority should have decided the case upon that basis and clearly reversed the Court of Appeals, rather than assuming Korum's legal argument arguendo and proceeding to reject Korum's factual argument.
ś 83 The dissent, however, musters a few federal cases suggesting a presumption where charges are raised at the pretrial stage. Dissent (Madsen, J.) at 42-43. None are from the United States Supreme Court, and even those authorities are rebutted by the better considered authorities. See, e.g., United States v. Jarrett, No. 05-2844, 2006 U.S.App. LEXIS 11433, 447 F.3d 520 (7th Cir.2006); United States v. Gamez-Orduno, 235 F.3d 453, 463 (9th Cir.2000); Paradise v. CCI Warden, 136 F.3d 331, 335 (2d Cir.1998); United States v. Yarbough, 55 F.3d 280, 282-83 (7th Cir.1995).
ś 84 Furthermore, the better reasoned decisions have declined to extend the presumption to pretrial charging decisions where the defendant has withdrawn from a plea agreement. See United States v. Barner, 441 F.3d 1310, 1319 (11th Cir.2006); Yarbough, 55 F.3d at 283; United States v. Cooks, 52 F.3d 101, 105-06 (5th Cir.1995); United States v. Stanley, 928 F.2d 575, 579 (2d Cir.1991). Nor do increased charges following a failed plea negotiation prove vindictiveness. See Alabama v. Smith, 490 U.S. 794, 802, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989) ("we have upheld the prosecutorial practice of threatening a defendant with increased charges if he does not plead guilty, and following through on that threat if the defendant insists on his right to stand trial.") (citing Bordenkircher, 434 U.S. at 363, 98 S.Ct. 663); Lee, 69 Wash. App. at 36, 847 P.2d 25; Gamez-Orduno, 235 F.3d at 462-63; United States v. Noushfar, 78 F.3d 1442, 1446 (9th Cir.1996).
ś 85 Here, charges were brought exceeding those Korum initially faced, but the correct baseline is not the initial charges. The relevant comparison includes the unfiled charges the prosecution warned Korum he would face if he rejected a plea. Goodwin held an increased charge brought after a "warning" by a prosecutor in plea negotiation does not support a claim of prosecutorial vindictiveness. 457 U.S. at 382 n. 15, 102 S.Ct. 2485.
ś 86 One of the benefits for Korum in his plea agreement was limiting charges to the 16 first charged. When Korum withdrew his plea agreement, the State returned to its earlier bargaining position. The prosecutor carried out the "warning" to Korum in a manner entirely permissible under the above precedents. Defendants, such as Korum, are responsible for the consequences of withdrawal from a plea agreement, especially where subsequently convicted of the charges by a jury of his peers. "That a prosecutor may offer `hardball' choices to a defendant does not make the process constitutionally unfair, so long as the choices are realistically based upon evidence and options known to both sides." Lee, 69 Wash.App. at 36, 847 P.2d 25.
ś 87 United States Supreme Court precedent also makes clear that lengthier sentences are a permissible and likely outcome following a jury trial rather than a plea agreement. A trial allows a judge to gather a more complete picture of the defendant as a morally culpable human being. See Smith, 490 U.S. at 801, 109 S.Ct. 2201 (noting through proof at trial the judge may gain "a fuller appreciation of the nature and extent of the crimes charged," and "insights into his moral character and suitability for rehabilitation."). Further, the court explicitly stated in Alabama v. Smith "that there is no basis for a presumption of vindictiveness where a second sentence imposed after a trial is heavier than a first sentence imposed after a guilty plea." 490 U.S. at 803, 109 S.Ct. 2201. Where there is no proof of actual vindictiveness, "[a] defendant's ultimate protection against overcharging lies in the requirement that the State prove all elements of the charged crime beyond a reasonable doubt." Lee, 69 Wash.App. at 37-38, 847 P.2d 25.

CONCLUSION
ś 88 The courts have reasonably questioned dramatic increase in charges post trialâ where charges have been greatly increased after a convicted defendant appeals on constitutional issues. Such a case suggests the prosecution is penalizing a defendant *39 who successfully asserts his rights. This is not such a case. These charges were increased pretrial when a plea was withdrawn by the defendant. Extension of the presumption of vindictiveness to such a case in which charges are increased pretrial does not reflect the United States Supreme Court's holdings or these of this court and would detrimentally affect the pretrial plea process that is so necessary to the operation of our justice system.
ś 89 I concur in the judgment reversing the dismissal of counts 17-22 and 24-32 for prosecutorial vindictiveness and disposing of the other charges as indicated by the majority.
MADSEN, J. (dissenting).
ś 90 In 1998, Jacob Korum was sentenced to 11 years in prison on two charges related to home invasion robberies. Two years later, after Korum successfully withdrew his unconstitutional plea, the Pierce County prosecutor charged 32 counts and, following a jury trial, recommended that Korum be sentenced to over 117 years in prison.
ś 91 The majority's conclusion that a presumption of prosecutorial vindictiveness does not arise in this case is erroneous for several reasons. First, the majority believes that provisions within RCW 9.94A.411 (formerly RCW 9.94A.440 (1996)), addressing prosecutorial discretion in charging, supports the State's decision to charge 32 counts, 15 of which were added after Korum withdrew his invalid guilty plea. However, the majority misreads that statute when it concludes that the prosecutor was mandated to file all but one of the charges.
ś 92 Second, the majority places more weight on the value of plea negotiations than it does on the defendant's right to be free of prosecutorial retaliation for exercising constitutional rights. This is particularly troubling because the inquiry in a claim of prosecutorial vindictiveness is whether the prosecutor filed charges in retaliation for the defendant's exercise of a constitutional right.
ś 93 Third, the majority mistakenly suggests that additional charges are not vindictive if they are supported by probable cause. However, a charge cannot be filed unless it is supported by probable cause; the fact that the charge is supported by probable cause does not resolve the question of prosecutorial vindictiveness.
ś 94 Fourth, the majority surprisingly and incorrectly states that factual circumstances resulting from a prosecutor's decision to file additional charges are not facts that can be considered in deciding whether a presumption of prosecutorial vindictiveness arises. Additionally, to reach its result the majority examines discrete facts and then concludes as to each fact that it does not show vindictiveness. This reasoning disregards the principle that whether a presumption of prosecutorial vindictiveness arises depends upon whether all of the circumstances, taken together, show a realistic likelihood of prosecutorial vindictiveness. I would hold that under all of the facts of this case a presumption of prosecutorial vindictiveness arose when the prosecutor filed additional counts after Mr. Korum exercised his constitutional right to withdraw his plea of guilty because it was not knowing, intelligent, and voluntary.
ś 95 The majority is also incorrect when it concludes that CrR 8.3(b) does not require dismissal of charges if a defendant is unable to establish prosecutorial vindictiveness. Unfortunately, the majority equates prosecutorial vindictiveness and prosecutorial misconduct under CrR 8.3(b). It finds that Mr. Korum failed to establish a presumption of prosecutorial vindictiveness and therefore he also failed to prove arbitrary action or misconduct required for dismissal under the criminal rule, erroneously conflating two distinct questions.
ś 96 Finally, the majority mistakenly holds that Korum opened the door to evidence of his prior withdrawn plea, an error under ER 410. It was the State, not Korum, which created the error. For these reasons, I respectfully dissent.

ANALYSIS

Prosecutorial Vindictiveness
ś 97 In deciding that the prosecutor's conduct in this case gives rise to a presumption of vindictiveness, the Court of Appeals began *40 its analysis with chapter 9.94A RCW, addressing prosecutor discretion. That statute provides, in relevant part, that "[t]he prosecutor should not overcharge to obtain a guilty plea" and "[o]vercharging includes ... [c]harging a higher degree ... [and c]harging additional counts." RCW 9.94A.411(2)(a)(ii).
ś 98 Rejecting the Court of Appeals' analysis, the majority here relies on RCW 9.94A.411(2) (formerly RCW 9.94A.440(2)) to hold that a prosecuting attorney has an obligation to charge all crimes against persons if sufficient evidence exists to bring the charges. Majority at 20. The majority reasons that all of the charges against Korum, with the exception of an unlawful possession charge, were crimes against persons and thus had to be filed. Majority at 20. The majority concludes that the Court of Appeals erred in concluding that prosecutorial charging discretion is limited. Id.
ś 99 To reach its conclusion, the majority relies on language in RCW 9.94A.411(2)(a) that says "`[c]rimes against persons will be filed if sufficient admissible evidence exists.'" Majority at 20 (quoting former RCW 9.94A.440(2)). The majority reasons that this is mandatory language overriding limitations in RCW 9.94A.411(2) on prosecutorial discretion, i.e., the statutory language relied on by the Court of Appeals directing that a prosecutor should not overcharge to obtain a guilty plea, with overcharging defined to include charging additional counts. See State v. Korum, 120 Wash.App. 686, 701-02, 86 P.3d 166 (2004).[1]
ś 100 However, it is clear that the legislature did not mean by the use of the words "will be filed" that crimes against persons are crimes that must be charged without regard to the limitations in RCW 9.94A.411(2)(a)(ii) quoted above. The legislature used the very same words "will be filed" in the statute with respect to crimes against property and all other crimes: "Crimes against property/other crimes will be filed. . . ." RCW 9.94A.411(2) (emphasis added).
ś 101 If the majority's reading of the provision regarding crimes against persons is correct, i.e., that the prosecution must charge all possible crimes against persons, then the same must be true for crimes against property and all other crimes because the same language relied on by the majority also applies to all other offenses. This would, however, leave no crimes subject to the limitations that the legislature explicitly wrote into the statute. Such a result would be nonsensical and clearly not the one intended since it would render part of the statute inoperative. See State v. Tandecki, 153 Wash.2d 842, 847, ś 11, 109 P.3d 398 (2005) (court does not treat words in a statute as meaningless; no part should be deemed inoperative). Instead, as the Court of Appeals reasoned, the legislature in fact placed limits on the prosecutor's discretion in charging any kind of offense.
ś 102 More significantly, the majority's flawed analysis of the statute sends a message to prosecutors that the statute requires them to charge all possible offenses against persons. Additionally, because the statutory language "will be filed" actually applies to all offenses, the majority can be understood only as holding that prosecutors must charge all offenses. Thus, although the majority chastises the Court of Appeals on the ground that its conclusion that a presumption of prosecutorial vindictiveness arose in this case would encourage prosecutors to charge all available offenses initially, majority at 25, the majority's explanation of former RCW 9.94A.440(2), now RCW 9.94A.411(2), mandates the very same thing, contrary to the legislature's clear intent.
*41 ś 103 Because the majority's reading of RCW 9.94A.411(2) is erroneous, it does not support its conclusion that the Court of Appeals was wrong nor, more importantly, does it support the majority's implication that the prosecutor essentially had no choice but to charge the additional counts after Korum withdrew his guilty plea. And RCW 9.94A.411 does not support the majority's conclusion that the filing of additional counts after Mr. Korum withdrew his plea was not vindictive.
ś 104 Another fundamental flaw in the majority's analysis of prosecutorial vindictiveness is its emphasis on plea negotiations at the expense of the defendant's constitutional rights. The majority equates plea negotiations that fail with a negotiated plea agreement and guilty plea, and says there is no reason to distinguish between a failure to plead guilty and a defendant's decision to withdraw a guilty plea. Majority at 22. However, a plea agreement resulting in a plea of guilty involves much more than uncompleted plea negotiations. A guilty plea constitutes a waiver of significant constitutional rights by a defendant including the right to a jury trial, to confront one's accusers, to remain silent, and to be convicted by proof beyond a reasonable doubt, and accordingly due process requires that a guilty plea be knowing, intelligent, and voluntary. State v. Walsh, 143 Wash.2d 1, 7, 17 P.3d 591 (2001) (citing cases). Incomplete plea negotiations do not involve any such waiver. And a defendant has a constitutional right to withdraw from a negotiated guilty plea if it was unconstitutionally obtained. Here, Korum exercised his constitutional right to withdraw from a negotiated guilty plea that was not knowing, intelligent, and voluntary.
ś 105 Significantly, by emphasizing the importance of plea negotiations the majority overlooks the central inquiry where prosecutorial vindictiveness is claimed. That inquiry is whether the prosecutor filed additional charges in retaliation for the defendant's exercise of constitutional rights. The question here is not whether Korum upset the plea negotiation process, but whether the prosecutor retaliated against him by filing the additional charges because Korum exercised his right to withdraw an unconstitutional guilty plea. There is no exercise of constitutional rights involved in the pre-plea negotiation process.
ś 106 It is well established that a defendant is entitled to pursue his or her constitutional or statutory rights free of apprehension that the State will retaliate for the exercise of such rights by substituting a more serious charge or adding charges. Bordenkircher v. Hayes, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); Blackledge v. Perry, 417 U.S. 21, 28, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). Accordingly, the State may not enhance the charges against a defendant in retaliation for the exercise of constitutional or statutory rights. United States v. Goodwin, 457 U.S. 368, 372, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982). "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is `patently unconstitutional.'" Bordenkircher, 434 U.S. at 363, 98 S.Ct. 663 (quoting Chaffin v. Stynchcombe, 412 U.S. 17, 32 n. 20, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973)) (citation omitted); see North Carolina v. Pearce, 395 U.S. 711, 738, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); United States v. Falcon, 347 F.3d 1000, 1004 (7th Cir.2003); State v. Bonisisio, 92 Wash.App. 783, 790-91, 964 P.2d 1222 (1998); State v. McKenzie, 31 Wash.App. 450, 452, 642 P.2d 760 (1981). "The broad discretion accorded prosecutors in deciding whom to prosecute is not `unfettered,' and a decision to prosecute may not be deliberately based upon the exercise of protected ... rights." United States v. Adams, 870 F.2d 1140, 1145 (6th Cir.1989).
ś 107 A defendant can establish prosecutorial vindictiveness in two ways. First, the defendant can establish actual vindictiveness. United States v. Raymer, 941 F.2d 1031, 1040 (10th Cir.1991); see Goodwin, 457 U.S. at 384, 102 S.Ct. 2485; Bonisisio, 92 Wash. App. at 791, 964 P.2d 1222. To establish actual vindictiveness, the defendant must prove through objective evidence that the prosecutor acted to punish the defendant for *42 exercising a constitutional or statutory right. United States v. Meyer, 810 F.2d 1242, 1245, vacated, 816 F.2d 695, reinstated, 824 F.2d 1240 (D.C.Cir.1987); see Goodwin, 457 U.S. at 384, 102 S.Ct. 2485. Korum has not established actual vindictiveness.
ś 108 Second, a defendant may establish a realistic likelihood of vindictiveness that gives rise to a rebuttable presumption of vindictiveness. Raymer, 941 F.2d at 1040; see Goodwin, 457 U.S. at 373, 102 S.Ct. 2485; Bonisisio, 92 Wash.App. at 791, 964 P.2d 1222. A reasonable likelihood of prosecutorial vindictiveness exists when it is more likely than not the enhanced charges are attributable to vindictiveness on the part of the prosecutor. United States v. Gary, 291 F.3d 30, 34 (D.C.Cir.2002); see Alabama v. Smith, 490 U.S. 794, 801, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). If "all of the circumstances, when taken together," Meyer, 810 F.2d at 1246, show a realistic likelihood of prosecutorial vindictiveness, and thus give rise to a presumption of vindictiveness, "the government bears the burden of disproving it or justifying the challenged state action," Bragan v. Poindexter, 249 F.3d 476, 482 (6th Cir.2001) (citing Goodwin, 457 U.S. at 374, 102 S.Ct. 2485 and United States v. Andrews, 633 F.2d 449, 456 (6th Cir.1980)); see Meyer, 810 F.2d at 1248; Bonisisio, 92 Wash.App. at 791, 964 P.2d 1222. Thus, contrary to the majority's approach, a court should not separate the strands of the entire series of events and factual circumstances and examine each fact separately, but instead a court should consider all of the facts and circumstances as a whole.
ś 109 If the prosecution fails to sufficiently justify its decision, the presumption of vindictiveness stands. Bragan, 249 F.3d at 482; Meyer, 810 F.2d at 1245. If the prosecution meets its burden, then the defendant can show prosecutorial vindictiveness only by establishing actual vindictiveness. Meyer, 810 F.2d at 1245.
ś 110 The State maintains that a presumption of vindictiveness does not arise in the pretrial setting.[2] Some courts agree, but their opinions reflect an overly broad reading of Supreme Court precedent. To the contrary, the United States Supreme Court has not foreclosed the possibility that a presumption of vindictiveness may arise in the pretrial setting. Instead, the Court has rejected the presumption in two pretrial situations. In Bordenkircher, the Court held that the presumption does not apply where the prosecutor offers a defendant the opportunity to plead guilty or face the threat of more serious charges, provided that the more serious charges are supported by probable cause, the defendant is fully informed of the conditions of the offer, and the defendant has the choice of accepting or rejecting the offer. Bordenkircher, 434 U.S. at 363-64, 98 S.Ct. 663. In Goodwin, the Court held that a presumption of vindictiveness does not arise where a defendant refuses to plead guilty to a misdemeanor and instead elects to go to trial, and the prosecution then secures a felony indictment. Goodwin, 457 U.S. at 382-84, 102 S.Ct. 2485.
ś 111 In accord with the principles set out in Goodwin and Bordenkircher, prosecutorial vindictiveness will not be found where the only showing of vindictiveness is the pretrial addition of new charges supported by probable cause, usually where the defendant declines to plead guilty or plea negotiations fail, as the Court of Appeals has concluded in several decisions. E.g., Bonisisio, 92 Wash. App. at 790-92, 964 P.2d 1222; State v. Lee, 69 Wash.App. 31, 34-38, 847 P.2d 25 (1993); State v. Soderholm, 68 Wash.App. 363, 370-72, 842 P.2d 1039 (1993); State v. Lass, 55 Wash.App. 300, 306, 777 P.2d 539 (1989); State v. Fryer, 36 Wash.App. 312, 316-17, 673 P.2d 881 (1983); State v. Johnson, 33 Wash.App. 534, 536-37, 656 P.2d 1099 (1982). As explained, however, there is a significant difference between cases involving a defendant's exercise of the constitutional right to withdraw a constitutionally defective guilty plea and cases where plea negotiations simply break down because, for example, the defendant chooses to go to trial. Significantly, *43 none of the Court of Appeals' cases cited by the majority involve a claim of retaliation for the exercise of the right to withdraw a constitutionally invalid negotiated guilty plea.
ś 112 Instead of foreclosing the possibility that prosecutorial vindictiveness may arise in the pretrial setting, as the State urges, the better view is that a court should consider all of the circumstances presented. For example, the District of Columbia Circuit explained in Meyer that the Court has not adopted a per se rule that the presumption will never lie in the pretrial setting. Meyer, 810 F.2d at 1246. The circuit court explained that "[t]he lesson of Goodwin is that proof of a prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption in the pretrial context" because it does not, alone, "present a `realistic likelihood of vindictiveness.'" Meyer, 810 F.2d at 1246 (citing Goodwin, 457 U.S. at 381-84, 102 S.Ct. 2485). However, "when additional facts combine with this sequence of events to create such a realistic likelihood, a presumption will lie in the pretrial context." Meyer, 810 F.2d at 1246. The critical question is whether the defendant has "shown that all of the circumstances, when taken together, support a realistic likelihood of vindictiveness and therefore give rise to a presumption." Id.
ś 113 Other courts similarly recognize that the presumption may arise in the pretrial setting. See, e.g., United States v. Krezdorn, 718 F.2d 1360, 1364 (5th Cir.1983) ("[t]he proper solution is not to be found by classifying prosecutorial decisions ... as being made pre- or post-trial"); accord United States v. Wells, 262 F.3d 455, 466-67 (5th Cir.2001); United States v. Suarez, 263 F.3d 468, 479 (6th Cir.2001) (citing Andrews, 633 F.2d at 454) ("prosecutorial vindictiveness can potentially be found in the pre-trial addition of charges following pre-trial assertions of protected rights"); United States v. Gallegos-Curiel, 681 F.2d 1164, 1169, 1170 (9th Cir. 1982) (in the "rare case" departures from the initial indictment may give rise to a presumption of vindictiveness); Raymer, 941 F.2d at 1040 ("reject[ing] the idea that a presumption of vindictiveness may never arise in the pretrial setting" and instead "look[ing] at the totality of the objective circumstances to decide whether a realistic possibility of vindictive prosecution exists"); see United States v. Doran, 882 F.2d 1511, 1520 (10th Cir.1989); State v. Tsosie, 171 Ariz. 683, 686-87, 832 P.2d 700, 703-04 (Ariz.Ct.App.1992); State v. Brule, 127 N.M. 368, 371-72, 981 P.2d 782 (1999).
ś 114 A defendant will rarely be able to produce proof of actual vindictiveness, see Goodwin, 457 U.S. at 384 n. 19, 102 S.Ct. 2485, a showing that is "`exceedingly difficult to make,'" Bragan, 249 F.3d at 481 (quoting Meyer, 810 F.2d at 1245); see Tsosie 171 Ariz. at 685, 832 P.2d 700. However, the underlying principle is not "the proposition that actual retaliatory motivation must inevitably exist," but instead that "`the fear of such vindictiveness may unconstitutionally deter a defendant's exercise,'" of his or her legal rights, Blackledge, 417 U.S. at 28, 94 S.Ct. 2098, and the due process violation lies "in the danger that the State might be retaliating against the accused for lawfully" exercising a constitutional or statutory right, Bordenkircher, 434 U.S. at 363, 98 S.Ct. 663. And, as the New Mexico Supreme Court fittingly observed, "while all forms of prosecutorial misconduct may impinge to some degree on a defendant's right to due process, prosecutorial vindictiveness constitutes a particularly severe, prejudicial, and repugnant due process violation." Brule, 127 N.M. at 370, 981 P.2d 782. Applying the presumption in the pretrial context in appropriate circumstances serves to protect the defendant's due process rights from serious misconduct that is rarely susceptible of direct proof.
ś 115 Accordingly, the question here is whether Korum has shown facts beyond the mere filing of more serious or additional charges following plea negotiation and the "routine" exercise of pretrial rights like those noted in Goodwin. More precisely, the question is whether Korum has established that the facts and circumstances of this case show the existence of a realistic likelihood of prosecutorial vindictiveness.
ś 116 The majority concludes, however, that unless the defendant proves additional facts, independent from the decision to file *44 additional charges, the filing of additional or more serious charges after the withdrawal from a plea agreement does not give rise to a presumption of vindictiveness. Majority at 23. This conclusion reveals the majority's fundamental misunderstanding of prosecutorial vindictiveness claims. The additional facts that result from or become apparent after the prosecutor's decision to file additional charges may be the very facts that establish vindictiveness. Here, for example, the prosecutor's exceedingly disparate treatment of the codefendants occurred only once the prosecutor charged Korum with 32 counts after he withdrew his plea. That disparate treatment is evidence of vindictiveness against Korum. To repeat, the question is whether the prosecutor is retaliating against the defendant because he or she exercised his or her constitutional rights. While the majority concludes that the presumption does not arise in this case, the facts say otherwise.
ś 117 Here, Korum and four other men, Michael Bybee, Ethan Durden, Brian Mellick, and Zachary Phillips, carried out a series of home invasions during the summer of 1997. The prosecutor originally charged Korum with sixteen counts in connection with two of the home invasions. In June 1998, the prosecutor initiated plea negotiations with Korum. Among other things, the prosecutor advised Korum that if he did not plead guilty, the State would file an amended information and charge 16 additional counts based on information about other home invasions obtained during the course of the plea negotiations.
ś 118 On July 31, 1998, pursuant to a plea agreement, Korum pleaded guilty to one count of first degree kidnapping while armed and one count of second degree possession of a firearm. At sentencing, the State recommended a sentence of 72 months on the kidnapping count, a 60-month firearm enhancement sentence to run consecutively to the kidnapping sentence, and a concurrent 12-month sentence on the firearm possession conviction (11 years). In recommending this sentence the prosecution referred to Korum's minimal participation in the home invasion. At the time, the prosecution was aware of all of the home invasions and in fact had threatened to bring additional charges if Korum did not plead guilty. Thus, the majority incorrectly claims that the additional charges resulted merely from additional investigation occurring during the plea negotiations. Moreover, the majority mistakenly discounts the prosecutor's markedly different characterizations before and after Korum withdrew his plea of Korum's degree of involvement in the crimes.
ś 119 After Korum successfully moved to withdraw his guilty plea the State filed an amended information charging 32 counts, consisting of the original 16 counts, the count of second-degree possession of a firearm that had been included in the plea bargain, and 15 additional counts arising from home invasions occurring prior to August 30, 1997. Following his convictions on 30 of the counts, the prosecutor asked for an exceptional sentence upward. When asked by the sentencing court why as a practical reason the State sought exceptional sentences when they would not increase the period of actual incarceration, the prosecuting attorney responded that he could not anticipate what would happen later. Report of Proceedings (RP) at 2326. Korum received a sentence of 608 months on the crimes, with firearm enhancements adding 600 months to the period of confinement, for a total of 1208 months.
ś 120 It may be reasonable to expect that additional counts will be charged if a defendant withdraws a guilty plea and elects to go to trial. And, as the Court of Appeals observed, a mere difference in the prosecution's sentencing recommendations where the first recommendation follows a plea agreement and the second recommendation follows a trial that includes additional counts is not enough to suggest a realistic likelihood of prosecutorial vindictiveness. Korum, 120 Wash.App. at 712-14, 86 P.3d 166. However, the Court of Appeals was absolutely correct when it said that "[a]lthough some significant increase in sentence recommendation is to be expected when a defendant rebuffs a plea bargain and puts the State to the risk and expense of a trial, nonetheless, this increase cannot be of a magnitude that suggests" the prosecutor has retaliated against the defendant *45 for exercising the right to withdraw a guilty plea and the right to a jury trial. Id. at 714, 86 P.3d 166 (footnote omitted). The remarkable difference in the State's pre- and post-trial characterizations of Korum's involvement in connection with the original 16 counts, where the State did not base its addition of new charges or its recommendation for exceptional sentences on any post-plea investigation, in connection with the increased charges and the State's sentencing recommendations, are circumstances that suggest prosecutorial vindictiveness.
ś 121 The number of counts on which Korum was tried and his sentences are also exceedingly disproportionate to the number of counts to which the other defendants who participated in the home invasions pled guilty and to the codefendants' sentences. Again, I recognize that Korum is not in the same position as his codefendants because he was convicted following a jury trial while they pled guilty. Generally, a defendant who pleads guilty obtains the benefit of a bargain involving reduced charges in exchange for the guilty plea. Predictably, defendants who plead guilty will usually do so on fewer counts and receive a lesser sentence than a defendant who exercises the right to trial by jury and is convicted.
ś 122 However, the extreme variances here, together with the other circumstances, suggest a reasonable likelihood of vindictiveness. The charges against Korum and his resulting sentences far exceeded that of his codefendants. His sentence was nearly five times that of the codefendant some victims identified as the main actor, Durden, and five times that of the codefendant with the next longest sentence. While it is true that Korum effectively conceded that the sentences on the crimes for which he was convicted are within standard range sentencing, the fact is that the sentencing situation before the court resulted from the State's decision to nearly double the original charges against Korum after he withdrew his plea. That decision was made after the State had already determined that Korum was a lesser participant than the codefendants in half of the charged crimes, had agreed to the earlier guilty plea by Korum to two counts only, and had entered into plea agreements with the codefendants where the longest period of imprisonment imposed was a fraction of that imposed in Korum's case.[3]
ś 123 Moreover, as explained, this is not a case where the added charges were "brought simply as the result of failure of the plea bargaining process." Suarez, 263 F.3d at 479. The circumstances involve more than the State merely filing additional charges after routine pretrial defense motions during ongoing plea negotiations. Instead, Korum legitimately sought to withdraw his plea agreement after his guilty plea was accepted and he was sentenced, because that plea was not knowing, intelligent, and voluntary since he was not advised of all the sentencing consequences of the plea. In addition, the circumstances here vary from the typical case where plea negotiations fail because the added charges in this case were not "`filed in the routine course of prosecutorial review or as a result of continuing investigation'" during ongoing plea negotiations. United States v. Gamez-Orduno, 235 F.3d 453, 463 (9th Cir.2000).
ś 124 While the prosecutor's stake is not the same here as it would be if retrial were necessary following withdrawal of the plea, I believe the Sixth Circuit appropriately rejected the "argument that the prosecutorial stake in a pretrial setting is always so de minimis that there can never be a `realistic likelihood of vindictiveness' in a pre-trial setting." Andrews, 633 F.2d at 454. Here, the plea negotiations were complete, the guilty plea entered, and the defendant sentenced. The severely disproportionate response to withdrawal of the plea, both in terms of comparison to the original charges against Korum and his sentences following the guilty plea and in terms of comparison to the *46 charges and sentences of Korum's codefendants, gives rise to a realistic likelihood of prosecutorial misconduct, and thus to a presumption of prosecutorial vindictiveness.
ś 125 Once a defendant shows from the totality of the facts and circumstances that a realistic likelihood of prosecutorial vindictiveness exists, the burden shifts to the State to rebut the presumption. "The standard ... is an objective oneâ whether a reasonable person would think there existed a realistic likelihood of vindictiveness" so that the government must then produce an objective explanation for its action. Andrews, 633 F.2d at 454, 456. Thus, for example, governmental discovery of previously unknown evidence or previous legal impossibility can justify the government's action. Andrews, 633 F.2d at 456 & n. 10.
ś 126 The State has not rebutted the presumption, either before this court or in the trial court proceedings. The State now argues that the Court of Appeals erred only in applying a presumption of prosecutorial vindictiveness and presents no objective explanation for its conduct. The State argued to the trial court that Korum failed to make a prima facie case of vindictiveness, that upon withdrawal of the plea agreement the parties were simply put back in the position they were in prior to the guilty plea, and that the State simply charged all the crimes it knew of when the plea was negotiated. Because the State has failed to rebut the presumption of prosecutorial vindictiveness, it should stand. Bragan, 249 F.3d at 482; Meyer, 810 F.2d at 1245.
ś 127 The "ordinary remedy" for prosecutorial vindictiveness is to "bar the augmented charge[s]." Andrews, 633 F.2d at 455. Accordingly, this court should affirm the Court of Appeals dismissal of counts 17, 20-22, 24, 26-27 and 30-32. (Counts 18-19 and 25 were the added kidnapping charges dismissed as incidental to the robberies.)[4]

CrR 8.3(b)
ś 128 The Court of Appeals remanded to the trial court for a determination of which counts aside from those added after Korum withdrew his plea should be dismissed under CrR 8.3(b) to provide a deterrent to prosecutorial vindictiveness. The majority reverses the Court of Appeals on this point, reasoning that Korum has not established prosecutorial vindictiveness and has not proved arbitrary action or misconduct required for a dismissal under CrR 8.3(b).
ś 129 It is important not to blur these two separate inquires. CrR 8.3(b) provides that a court "may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect[s] the accused's right to a fair trial." The issue whether dismissal is proper based on prosecutorial vindictiveness is a distinct issue from whether charges should be dismissed under CrR 8.3(b), and a holding that a presumption of prosecutorial vindictiveness has not been established does not foreclose a claim under CrR 8.3(b).
ś 130 A hypothetical example shows why this is the case. Imagine three codefendants who have engaged in a series of crimes, with each participating equally. The prosecutor engages in plea negotiations with each of the defendants, and makes the threat in each case that all possible counts will be filed if the defendant does not plead guilty. Ultimately, each of the defendants rejects a plea and exercises the right to a trial by jury. One of the three codefendants is represented by counsel who has undertaken to file every conceivable motion at every conceivable opportunity, *47 making the prosecutor "jump through" every possible "hoop," and has a difficult personality. As to the defendant represented by the "difficult" attorney, and as to that defendant only, the prosecutor carries out the threat to bring all possible counts, with the result being that this defendant faces charges that exceed those of his codefendants many times over.
ś 131 This defendant is unlikely to prevail on a claim of prosecutorial vindictiveness, because his counsel has filed the routine pretrial motions that inevitably impose some burden on the prosecution. See Goodwin, 457 U.S. at 381, 102 S.Ct. 2485. However, he has a very good claim under CrR 8.3(b) that the prosecutor has acted arbitrarily as shown by the disparate treatment of the defendant represented by the unpleasant attorney in comparison to the other two defendants and in light of all the circumstances.
ś 132 Prosecutorial vindictiveness should not be equated with misconduct under CrR 8.3(b). Whether Korum has established prosecutorial vindictiveness is not relevant to the question whether he is entitled to dismissal under CrR 8.3(b), contrary to the majority's suggestion. Instead, the Court of Appeals' remand for consideration of whether charges should be dismissed under CrR 8.3(b) should be reversed solely on the ground that Korum has failed to show arbitrary action or governmental misconduct with respect to the original counts, and thus has failed to establish that he is entitled to dismissal under CrR 8.3(b).

ER 410
ś 133 Finally, I disagree with the majority's conclusion that the trial court's error under ER 410 in admitting evidence of Korum's withdrawn guilty plea was invited error. Contrary to the majority's characterization of what happened, it was the State, not Korum, which opened the door to the evidence. At trial, the State called Korum's father as a witness. On direct examination, Korum's father testified that he had received death threats against his son. The prosecuting attorney asked if he and his son had discussed whether these threats were related to Korum's involvement in the crimes with which he was charged. Korum's father testified that his son had never discussed the crimes with him until the year before trial, when his son told him that he had been present at the scene of the crime but was present to try to purchase drugs only. The State asked Korum's father several times: "Did he tell you he wasn't involved in the crime?" RP at 1467. "Did he tell you what his involvement was?" Id. "Did he deny his involvement in that crime?" RP at 1480. "Has he ever told you anything more than what you have testified about?" RP at 1495. Korum's father repeatedly explained that Korum had said he was present to purchase drugs.
ś 134 Only after the State opened the door to the inadmissible evidence did defense counsel ask on cross-examination: "Jacob always denied ... involvement in the robbery, isn't that true ...?" RP at 1522. "He always has denied involvement in [the] kidnapping; isn't that true?" Id. "Denied involvement in the assault, [the] robbery, the burglary?" Id. Each time, Korum's father responded affirmatively.
ś 135 Thus, contrary to the majority's conclusion, Korum did not invite the error because he did not set it up. See In re Pers. Restraint of Tortorelli, 149 Wash.2d 82, 94, 66 P.3d 606 (2003); State v. Myers, 133 Wash.2d 26, 36, 941 P.2d 1102 (1997). As Korum argues, it was the State that elicited the testimony from Korum's father that Korum had denied involvement in the crimes and said he was present to purchase drugs only The defense followed up with substantially similar questions resulting in the same response, i.e., that Korum always denied involvement in the crimes. The defense did not "open" any "door" that the State had not already opened, nor did the defense introduce any evidence about the withdrawn plea or related statements.
ś 136 While I do not agree that Korum invited the ER 410 error, I agree that the error was not reversible error. Reversal is not required unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred. State v. Bourgeois, 133 Wash.2d 389, 403, 945 P.2d 1120 (1997). Here, within *48 reasonable probabilities, the outcome of the trial was not materially affected by admission of the evidence. Among other things, Korum testified that he had been present at two of the home invasions, he said to purchase drugs. He claimed he had not been present at the other home invasions, but admitted he had joked about having been involved in one of them. The jury also heard Korum's father testify that Korum had admitted being present to buy drugs. The jury heard evidence that Korum had fled to Mexico and met with another of the codefendants, who had escaped being arrested. The jury also heard from witnesses and victims who identified Korum as having been present at some of the home invasions. Thus, the ER 410 error was harmless.

CONCLUSION
ś 137 The Court of Appeals' determination that a presumption of prosecutorial misconduct arose in this case should be affirmed, and, because the State has failed to rebut the presumption, dismissal of the 15 new counts added after Korum withdrew his invalid guilty plea should also be affirmed. Accordingly, I dissent.
Dissenting: CHAMBERS, C. JOHNSON, SANDERS, JJ.
C. JOHNSON, J. (concurring in the dissent).
ś 138 While I agree with Justice Madsen's dissent, I write separately to point out a potential problem that may arise at resentencing on remand.
ś 139 Justice Fairhurst's opinion concludes that the sentencing court did not err in refusing to apply RCW 9.94A.535(1)(g) in imposing sentence. Since this case is remanded for resentencing and the sentencing court will make a new record, this issue perhaps need not be addressed. However, Justice Fairhurst errs in confusing the requirements of RCW 9.94A.535(1)(g) with the requirements of imposing an exceptional sentence below the standard range under RCW 9.94A.535. While the statutory requirements appear to be the same, a slight but significant distinction exists.
ś 140 In the typical case where a judge considers sentencing below the standard range for a criminal conviction, a finding of substantial or compelling reasons must be found to support the exceptional downward departure. The inquiry is slightly different in choosing the appropriate sentence where RCW 9.94A.535(1)(g) is invoked. This section requires that where multiple convictions exist, the sentencing court must determine whether the standard range mandated by the guidelines is clearly excessive. The distinction in approach is somewhat subtle but significant. Where a judge makes a "clearly excessive" determination, the substantial and compelling reasons to justify a downward sentence departure are satisfied. Most critical is the record the sentencing court must make when imposing the appropriate sentence.
ś 141 RCW 9.94A.535(1)(g) provides authority for judges when imposing sentence to consider a departure from the standard range where "[t]he operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly excessive in light of the purpose of this chapter, as expressed in RCW 9.94A.010." RCW 9.94A.010 directs that sentencing discretion should be focused to "[e]nsure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history." RCW 9.94A.010(1).
ś 142 While the statute does involve a degree of discretion, in order to facilitate review, the judge when imposing sentence, in cases such as we have here, should make a complete record, which should include a determination of the seriousness of the offense or offenses, the offenders' criminal history, and the proportionality of the sentence imposed. A complete record will facilitate appellate review.
Concurring in dissent: CHAMBERS and SANDERS, JJ.
OWENS, J. (concurring in part with C. JOHNSON, J.).
ś 143 While I have signed the majority opinion, I agree with Justice Charles Johnson's *49 main argument in his concurrence in dissent. A different approach for sentencing is required under RCW 9.94A.535(1)(g). I also agree that sentencing courts applying RCW 9.94A.535(1)(g) should make a complete record to facilitate appellate review.
NOTES
[1] All four of Korum's coconspirators also pleaded guilty to fewer charges related to the Beaty/Molina home invasion in order to obtain lesser sentences. The trial court sentenced Durden to 22 years of confinement, which was the longest sentence received by any of the participants in the home invasions.
[2] Korum maintains that the State's petition for review is untimely. This court previously rejected this argument, and we decline to consider it further.
[3] Contrary to the dissent's reading, we do not suggest that the prosecuting attorney "must charge all possible crimes against persons." Dissent at 40. As noted above, the prosecuting attorney has broad discretion in making charging decisions. See Lewis, 115 Wash.2d at 299, 797 P.2d 1141. Former RCW 9.94A.440(2) provides "standards" for exercising that discretion, not mandates.

Moreover, it is important to read all of the relevant portions of former RCW 9.94A.440(2) together. Former RCW 9.94A.440(2) provides standards for deciding to prosecute "crimes against persons" (such crimes "will be filed if sufficient admissible evidence exits, which, when considered with the most plausible, reasonably foreseeable defense that could be raised under the evidence, would justify conviction by a reasonable and objective fact-finder.") and for deciding to prosecute "[c]rimes against property/other crimes" (such crimes "will be filed if the admissible evidence is of such convincing force as to make it probable that a reasonable and objective fact-finder would convict after hearing all the admissible evidence and the most plausible defense that could be raised." (emphasis added)). Thus, even though the decision to prosecute is entirely within the prosecuting attorney's discretion, the lower standard for prosecuting crimes against persons suggests that the legislature intended to provide even greater freedom to prosecuting attorneys in charging those crimes.
The subsequent suggestion that a "prosecutor should not overcharge to obtain a guilty plea" does not restrict the prosecuting attorney's discretion to make the decision to charge crimes against persons. Former RCW 9.94A.440(2)(2).
[4] Korum did not appeal his conviction and sentence on count 23, unlawful possession of a firearm in the second degree.
[5] Like Korum, the dissent fails to cite a single additional fact that gives rise to a presumption of vindictiveness separate from the prosecuting attorney's decision to follow through on his warning to file additional charges. See dissent at 44. Just as the filing of additional charges alone does not give rise to a presumption of vindictiveness, neither does the result of the filing of those additional charges. Moreover, the dissent provides no support for its suggestion that "[t]he additional facts that result from or become apparent after the prosecutor's decision to file additional charges may be the very facts that establish vindictiveness." Id.

The dissent cites Korum's longer sentence and disparate treatment as facts indicating vindictiveness. Id. However, Korum necessarily received a longer sentence and disparate treatment than his codefendants because he proceeded to trial on 32 counts and the jury convicted him of 30 of those counts, while Korum's codefendants all pleaded guilty to significantly fewer counts. Neither Korum nor the dissent cites any additional fact separate from the prosecuting attorney's decision to add charges and the result of that decision, much of which was out of the prosecuting attorney's hands.
[6] The dissent concedes that during plea negotiations the prosecuting attorney "advised Korum that if he did not plead guilty, the State would file an amended information and charge 16 additional counts based on information about other home invasions obtained during the course of the plea negotiations." Dissent at 44. This fact alone indicates that the prosecuting attorney did not retaliate against Korum for withdrawing his plea, as the prosecuting attorney warned Korum that he would add the charges before wrT-rum even agreed to the plea.
[7] The dissent asserts that "the circumstances here vary from the typical case where plea negotiations fail because the added charges in this case were not `"filed in the routine course of prosecutorial review or as a result of continuing investigation"' during ongoing plea negotiations." Dissent at 45 (quoting United States v. Gamez-Orduno, 235 F.3d 453, 463 (9th Cir.2000) (quoting Gallegos-Curiel, 681 F.2d at 1169)). To the contrary, that is precisely what occurred in this case. During plea negotiations, the prosecuting attorney wrote a letter that stated, "Additionally, as the investigations have been ongoing, new charges are likely on the horizon (newly-confirmed home invasions in other cases). Obviously, if we resolve the currently charged cases, I would decline to file the new ones." CP at 187. After withdrawing his guilty plea because he was not properly advised about the mandatory two year community placement, the prosecuting attorney followed through on this warning and filed the 16 additional counts. As a result, Korum ended in the same position he would have been in had he never pleaded guilty, which is the proper result of a defendant withdrawing his guilty plea.
[8] The dissent's assertion that we "separate the strands of the entire series of events and factual circumstances and examine each fact separately" when we instead "should consider all of the facts and circumstances as a whole" is a misguided plea to ignore the facts of this case. Dissent at 42. In fact, it would be improper for us to consider the addition of 16 counts without considering what those counts reflect. The dissent obscures the fact that the 16 additional charges involved three additional home invasions in which Korum was a more culpable participant than he was in the incidents related to the 16 original charges. Thus, we conclude that both the circumstances as a whole and a focused examination of the facts reveal that the additional charges do not give rise to a presumption of prosecutorial vindictiveness.
[9] The facts of this case illustrate why the "magnitude" of added charges and the consequent sentence does not accurately reflect whether prosecutorial vindictiveness occurred. Here, although the prosecuting attorney doubled the charges after Korum withdrew his plea agreement, those charges were related to more than double the criminal incidents.
[10] The concurrence in the dissent incorrectly labels the provisions in RCW 9.94A.535 as "requirements." See concurrence in the dissent at 48. As noted above, the sentencing court was not required to consider an exceptional sentence downward, which is further reinforced by language preceding RCW 9.94A.535(1)(g) that states, "The following are illustrative factors which the court may consider in the exercise of its discretion to impose an exceptional sentence. The following are illustrative only and are not intended to be exclusive reasons for exceptional sentences." RCW 9.94A.535 (emphasis added). Additionally, the concurrence in the dissent's suggestion that the sentencing court should have made a more complete record for appellate review is immaterial, particularly when it was entirely within the court's discretion to even consider an exceptional sentence downward in the first place.
[11] Despite the dissent's misleading suggestion to the contrary, the only basis asserted for dismissing charges under CrR 8.3(b) in this case was Korum's claim of prosecutorial vindictiveness. See dissent at 46-47. Korum does not argue any arbitrary action or misconduct separate from his vindictiveness claim as a basis for dismissing charges under CrR 8.3(b). In fact, Korum did not even request a remedy under CrR 8.3(b) for vindictiveness â that remedy was crafted entirely by the Court of Appeals. See Korum, 120 Wash. App. at 719, 86 P.3d 166. Therefore, because we hold that Korum failed to prove his claim of prosecutorial vindictiveness, and because Korum did not allege any other arbitrary action or governmental misconduct under CrR 8.3(b), we must necessarily reverse the Court of Appeals' use of CrR 8.3 as a remedy to deter prosecutorial vindictiveness.
[12] Although Korum argued in this court and at the Court of Appeals that under the Washington Constitution his sentence amounted to "cruel and unusual" punishment, article I, section 14 refers only to "cruel" punishment. Answer to Pet. for Review and Conditional Cross-Pet. for Review (Answer) at 27; Br. of Appellant at 70-73; WASH. CONST. art. I, § 14.
[13] Korum submits this court's decision in State v. Recuenco, 154 Wash.2d 156, 110 P.3d 188 (2005), overruled by Washington v. Recuenco, 2006 U.S. LEXIS 5164 (2006) as additional authority relating to the constitutionality of his sentence. In Recuenco, this court held that firearm sentence enhancements, similar to those imposed on Korum, violated the sixth amendment to the United States Constitution under Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), if not found by a jury. Recuenco, 154 Wash.2d at 162, 110 P.3d 188. This court also held that such a Sixth Amendment violation never constitutes harmless error, a holding which the United States Supreme Court recently reversed in Washington v. Recuenco. Id. at 164, 110 P.3d 188; Washington v. Recuenco, 2006 U.S. LEXIS 5164, at *1. However, the Court left open the possibility that the Sixth Amendment violations in Recuenco's case were not harmless error under Washington law. Washington v. Recuenco, 2006 U.S. LEXIS 5164, at *12 & n. 1.

We decided Recuenco on April 14, 2005, while Korum's appeal was pending with this court. However, Korum did not specifically challenge the constitutionality of his sentence under the Sixth Amendment in the lower courts, and he did not previously identify the sentencing court's imposition of firearm enhancements as error. A party may not raise an issue for the first time through a statement of additional authority. Frank v. Fischer, 108 Wash.2d 468, 739 P.2d 1145 (1987). As a result, we decline to reach the issue.
[14] Korum did list the following six issues under the subheading "VI. Conditional Petition for Cross Review" of the table of contents section of his conditional cross-petition, but he did not list the issues in his concise statement of issues presented for review. Answer at i, 2.
[15] The dissent's characterization that "it was the State that elicited the testimony from Korum's father that Korum had denied involvement in the crimes" is misleading. Dissent at 47. The prosecuting attorney's questions related to what Korum had told his father were substantially different from the defense attorney's questions regarding whether Korum had "always" denied involvement in the crimes. Although Korum may never have told his father directly that he was involved, his father was present when Korum pleaded guilty and apologized to the families involved. Thus, while the State's initial questions about what Korum told his father did not open the door to the guilty plea evidence, the defense's subsequent questions regarding whether Korum had "always" denied involvement in the crimes did open the door.
[16] ER 403 provides, in relevant part, that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ...."
[17] The Court of Appeals also noted that the evidence did not qualify as evidence of prior bad acts under ER 404(b) because the testimony did not specify whether Korum was a suspect, victim, or witness. Korum, (unpublished portion), at *84.

Korum did not appeal the admission of this evidence under ER 404(b) to this court.
[1] Specifically, I concur with the majority, except as to part III, section B(2). Concerning that section, I concur in judgment only.
[1] RCW 9.94A.411 recodifies former RCW 9.94A.440(2), the statute addressed by the Court of Appeals and cited by the majority. The relevant language is substantively unchanged. RCW 9.94A.411(2)(a)(ii) provides that "[t]he prosecutor should not overcharge to obtain a guilty plea. Overcharging includes ... [c]harging a higher degree ... [and c]harging additional counts." The provision also states:

This standard is intended to direct prosecutors to charge those crimes which demonstrate the nature and seriousness of a defendant's criminal conduct, but to decline to charge crimes which are not necessary to such an indication. Crimes which do not merge as a matter of law, but which arise from the same course of conduct, do not all have to be charged.
Id.
[2] The majority correctly notes that although this court once commented that Washington cases "suggest[ ] that actual vindictiveness is required to invalidate the prosecutor's adversarial decisions made prior to trial," State v. McDowell, 102 Wash.2d 341, 344, 685 P.2d 595 (1984), the court has never analyzed the question.
[3] The majority suggests that if the additional charges are supported by probable cause, then adding those charges accounts for the discrepancies in the sentences imposed here for Korum's convictions and those of his codefendants. Majority at 23. But, whether probable cause supports the additional charges is relevant in the sense only that the State cannot charge an offense unless it is supported by probable cause. Thus, the fact that probable cause supports the additional charges certainly does not preclude a finding of prosecutorial vindictiveness.
[4] The concurrence's statement that my position harms defendants and disregards victims shows a fundamental misunderstanding of the plea bargaining process and the facts of this case. The State, at least as much as the defendant, benefits from plea bargaining. If the State suddenly elected not to plea bargain, the defendant's incentive to waive the constitutional right to jury trial would diminish dramatically and the State would find itself trying hundreds of cases that would otherwise have settled. With scarce State resources, the system would quickly reduce to chaos. Thus, contrary to the concurrence's predictions, the State is unlikely to abandon the plea bargain tool.

As to victims, the concurrence fails to recognize that before Korum withdrew his plea, the State was satisfied that only two charges were necessary to vindicate the ills Korum had visited on these victims. Moreover, at Korum's sentencing, victims of some of the crimes appeared to ask the court to show Korum leniency.